RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DAMION D. FAULKNER,

*Defendant-Appellant*.

No. 18-5867

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:15-cr-00101-1—Waverly D. Crenshaw, Jr., District Judge.

Decided and Filed:  June 7, 2019

Before:  SUHRHEINRICH, BUSH, and READLER, Circuit Judges.

---

## COUNSEL

---

**ON BRIEF:**  Michael C. Holley, FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant.  S. Carran Daughtrey, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

---

## OPINION

---

CHAD A. READLER, Circuit Judge.  A fifteen-count indictment charged Damion Faulkner with a host of child-pornography-related offenses.  Following his guilty plea to each count of the indictment, Faulkner was sentenced to 570 months in prison.

On appeal, Faulkner argues that the United States Sentencing Guidelines required the district court to "group" together at sentencing his respective charges for production and attempted production of child pornography (Counts 1 and 2), which would have resulted in a lower offense level for purposes of calculating Faulkner's Guidelines range. Faulkner also challenges his sentence as both substantively and procedurally unreasonable. We reject each of his arguments and **AFFIRM** the judgment of the district court.

## I. BACKGROUND

From childhood on, Damion Faulkner's life was plagued by sexual misconduct. A stepbrother sexually abused Faulkner when he was nine years old. And Faulkner's father was convicted and classified as a sex offender for filming Faulkner's thirteen-year-old stepsister while she was showering. Tragically, Faulkner would mirror this misconduct as an adult.

For a time, Faulkner overcame his challenging upbringing, graduating high school and enlisting in the United States Navy, where he served his country for two years before being discharged under honorable conditions. Upon his discharge, Faulkner went to live with his brother's family in Donelson, Tennessee.

But in the years that followed, Faulkner's life would take a downward turn. He would have run-ins with the law, including convictions for shoplifting and drunk driving. And far worse than that, Faulkner began to act upon his long-harbored sexual attraction to young girls.

A.    *Faulkner Engages In Sexual Misconduct With Minors.*

While residing with his brother, his brother's wife, and their five-year-old daughter, M.F., Faulkner touched M.F.'s groin on several occasions. M.F. told her parents about the incidents, but Faulkner denied the accusations, and no report was made to law enforcement.

Faulkner returned to his abusive ways a few years later. M.F., now eleven, along with her maternal half-sister, five-year-old O.B., were staying with M.F.'s father and Faulkner over a summer weekend. On the first night of the girls' stay, Faulkner snuck into O.B.'s room as she slept, pulled aside her shorts and underwear, and touched her bare vaginal area, recording the incident on his phone, both by photograph and video.

A separate incident took place the following day. This time, Faulkner took photographs as O.B. (wearing a bathing suit) and M.F. (wearing a sun dress) sat together. Though the girls were fully clothed, many of the photographs focused on the girls' genital areas or had other sexual overtones.

Faulkner circulated the images he captured to at least ten other like-minded individuals, with hopes of receiving similar images in return. With one of these individuals, he shared lurid advice about how to make sexual advances on prepubescent girls: "[J]ust get her alone and kiss her the worsed [sic] she can do is say no and if she does that's [sic] its tell her u want to make her a woman." To another individual, Faulkner described his previous "relationship" with M.F., explaining that she had reported the repeated abuse to no avail. And to yet another, Faulkner claimed to have taken additional photographs of M.F. that were lost when his phone stopped working.

For Faulkner, one criminal act led to another. In addition to recording illegal pornographic images of children, Faulkner also illegally amassed a large collection of pornographic images and videos of other child victims. Over time, Faulkner collected more than 3,500 images, the worst of which depicted the brutal rape and sexual mutilation of prepubescent minors.

Law enforcement ultimately caught up with Faulkner. In January 2014, officers in Tennessee executed a search warrant at the home of Faulkner's brother, where Faulkner was still residing. The officers discovered an extensive collection of child pornography on Faulkner's phone and computer. During the search, Faulkner confessed to capturing pornographic photographs and video of O.B. as she slept in 2013, as well as to molesting M.F. in 2006.

> **B.** *Faulkner Is Indicted On Child Pornography Charges And Initially Sentenced To 55 Years Imprisonment.*

Faulkner was indicted on July 15, 2015, and a superseding indictment was filed the following June. It charged Faulkner with four types of child-pornography-related offenses:

- Production and attempted production of child pornography under 18 U.S.C. §§ 2251(a) & (d) (Counts 1 and 2);

- Attempted transportation and transportation of child pornography under 18 U.S.C. §§ 2252A(a)(1) & (b) (Counts 3 through 13);

- Receipt of child pornography under 18 U.S.C. § 2252A(a)(2)(A) (Count 14); and

- Possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B) (Count 15).

Faulkner pleaded guilty to all fifteen counts.

Based upon that plea, the Presentence Report calculated Faulkner's offense level as 44. It was subsequently reduced to 43 pursuant to U.S.S.G. § 5A n.2, which states that offense levels above 43 are to be reduced to 43, the highest level recognized by the Guidelines. With respect to his criminal history calculation, Faulkner was assigned category II, having been assessed one criminal history point for each of his two prior convictions, one for shoplifting and another for drunk driving. But in view of the maximum offense level of 43 assessed to Faulkner, the Guidelines recommended a life sentence regardless of his criminal history category. U.S.S.G. § 5A.

Seeking to lower his Guidelines calculation, Faulkner asked the district court to apply U.S.S.G. § 3D1.2, which requires that "closely related counts" be "grouped together into a single group" for purposes of sentencing. Faulkner argued that Counts 1 and 2—for production and attempted production of child pornography, respectively—were closely related and thus should be grouped at sentencing because they addressed conduct that caused the same composite harm. Grouping these two Counts would have reduced Faulkner's offense level from 43 to 41, resulting in a Guidelines range reduction from life imprisonment to 360 months to life imprisonment. U.S.S.G. § 5A.

The district court rejected Faulkner's request. It did so on the basis that the attempted production of child pornography offense resulted in a harm different than the production offense, as the attempted production offense took place on a different day, in a different setting, and involved a second victim. The district court nonetheless noted that it would take account of Faulkner's argument again when assessing the 18 U.S.C. § 3553(a) factors.

When it turned to those factors, the district court first highlighted the reprehensible nature of Faulkner's conduct and the strong need for general and specific deterrence in the child pornography context. By the same token, it characterized Faulkner's criminal history as "thin." The district court also cited testimony from Faulkner's family members, who asked for leniency, and from Vanderbilt University Psychologist Dr. Kimberly Brown, who testified that Faulkner's risk of reoffending was relatively low according to actuarial data. Taking all of this into account, the district court sentenced Faulkner to 25 years on Count 1, 15 years on Count 2 (the mandatory minimum), 15 years on Counts 3 through 13, 7.5 years on Count 14, and 7.5 years on Count 15. Counts 1, 3, 14, and 15 were to run consecutively, resulting in a total sentence of 55 years.

C.      *Following A Successful Appeal, Faulkner's Sentence Was Reduced To 47.5 Years.*

Faulkner appealed his sentence to this Court. In that appeal, one argument stood above the rest: That Faulkner's sentences on Counts 14 (downloading child pornography) and 15 (possessing child pornography) violated the Fifth Amendment's Double Jeopardy Clause because they involved downloading and then possessing the same images. We remanded the case for further factual development with respect to the Double Jeopardy issue and accordingly declined to reach Faulkner's other challenges, awaiting resolution of the remanded proceeding. *See United States v. Faulkner*, 730 F. App'x. 325, 330 (6th Cir. 2018).

On remand, the government agreed with Faulkner that his sentences on Counts 14 and 15 should run concurrently rather than consecutively. The district court entered an order reflecting that agreement, reducing Faulkner's sentence to 47.5 years and rendering his Double Jeopardy challenge moot. The final judgment was amended to reflect the new sentence. Faulkner then filed this timely appeal for review of his remaining arguments.

## II. ANALYSIS

A.      *The District Court Properly Rejected Faulkner's Request To Group Counts 1 and 2.*

Was Faulkner's sentence unjustifiably lengthened by the district court's refusal to group his production and attempted production of child pornography charges? Faulkner says that it was, citing U.S.S.G. § 3D1.2 for support. We disagree.

Our analytical starting point is the terms of the Guidelines. Section 3D1.2 provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." The Guideline goes on to identify four instances in which counts in an indictment will be considered to "involve substantially the same harm," making them eligible for grouping. U.S.S.G. § 3D1.2; *see also United States v. Bivens,* 811 F.3d 840, 842 (6th Cir. 2016). Those instances are defined in subsections (a)–(d) of the Guideline. *See* U.S.S.G. §§ 3D1.2(a)–(d).

We understand Faulkner to be relying exclusively on subsection (b), the lone subsection he invoked below. Arguments based upon other subsections are likely forfeited, *see Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008), and would be unlikely to prevail in any event. Subsection (a) applies to counts involving the "same act or transaction." Faulkner's offenses, however, occurred over separate days and involved different factual settings. In other words, they were different acts or transactions. Subsection (c) applies where an additionally charged offense is already accounted for under the Guideline section governing the principal offense. That subsection applies when, for example, a defendant is separately charged with manufacturing methamphetamine and reckless endangerment of children. If the section governing the manufacturing charge (the charge carrying the higher base offense level) provides for a two-level enhancement when the conduct endangered the lives of children, the two charges are grouped under subsection (c). *See United States v. Eversole*, 487 F.3d 1024, 1032 (6th Cir. 2007). Finally, subsection (d) applies when a defendant's "offense level is determined largely on the basis of the total amount of harm or loss . . . or some other measure of aggregate harm." Emblematic examples include property and drug crimes. *See* § 3D1.2 cmt n.6. We need not determine whether the production of child pornography is similarly emblematic, because the Sentencing Commission has given us a more specific direction. It excluded from the scope of subsection (d) violations of 18 U.S.C. § 2251(a) involving the production of child pornography. *See* U.S.S.G. §§ 2G2.1, 3D1.2(d). Faulkner's Count 1 is thus ineligible for grouping under subsection (d). *See United States v. Settle*, 414 F.3d 629, 632 n.2 (6th Cir. 2005) (noting that provisions dependent on the grouping rules do not operate unless *both* substantive offenses are eligible for grouping).

Turning then to section § 3D1.2(b), we are instructed that, for purposes of sentencing, counts should be deemed to "involve substantially the same harm" when they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." The Guidelines offer some examples of when counts "involve substantially the same harm." Counts for conspiracy to commit extortion and the completed extortion do; counts for robbing the same person on different occasions do not. Nor do counts for raping the same victim on different days. *See* § 3D1.2 cmt n.4; *Bivens*, 811 F.3d at 842.

Applying these principles in the context of child pornography, we held in *Bivens* that separate instances of photographing the same minor should not be grouped under subsection (b). *Bivens*, 811 F.3d at 843. That was so, we observed, because "[e]ven if the same act is repeated during an ongoing, continuous pattern of criminality between a single defendant and his victim, each act usually amounts to a fresh harm the victim must face." *Id.* (collecting cases).

Were Faulkner seeking to group multiple counts for completed child pornography offenses, he concedes that *Bivens* would control here. But Faulkner says his case is "unique" (and thus not controlled by *Bivens*) because Count 2 was merely an attempted offense, not a completed one. It follows, says Faulkner, that the two episodes caused the same composite harm: Whatever harm O.B. experienced from the lascivious photos Faulkner took on day 1, she suffered no distinct harm from his attempt to take lascivious photographs of her on day 2. And M.F., Faulkner argues, was not harmed by either incident.

We see no distinction between this case and *Bivens* simply because one count at issue involves attempting to produce child pornography. That attempt caused harm in every fair sense of the word. Start with the harm to the children involved. Faulkner took photographs of O.B. (wearing a bathing suit) and M.F. (wearing a sundress) that he intended to be lascivious in nature. He then sent those photographs to others via email. These photographs likely have been exchanged many times over by the individuals who received them. That conduct harmed these children in a way distinct from the harm caused by Faulkner's production of more revealing photographs the day before. And it is a harm, sadly, that may be relived for years to come,

should these images continue to circulate on the internet. *See New York v. Ferber*, 458 U.S. 747, 759 n.10 (1982); *see also United States v. Bistline*, 665 F.3d 758, 766 (6th Cir. 2012).

And now consider the harm to society more broadly. Congress proscribed the attempted production of child pornography to prevent not only harm to children, but also harm to "society as a whole." S. Rep. No. 95-438 (1977); *see also Ferber*, 458 U.S. at 757 n.8 ("[T]he sale of these movies, magazines and photographs depicting the sexual conduct of children [is] abhorrent to the fabric of our society . . . ."). Victimizing children in this fashion contributes to a growing market for child pornography and incentivizes the continuing sexual exploitation of other children. *See United States v. Bowers*, 594 F.3d 522, 528–29 (6th Cir. 2010). Case in point: Faulkner used the photographs he took (whether lascivious or not) to barter with like-minded individuals for other forms of child pornography. As victimized children reach adulthood, they often struggle to develop healthy relationships, and to find their place in society. *Ferber*, 458 U.S. at 758. In this way, their burdens are shared by all.

Given the serious and widespread harm these crimes inflict, Congress has chosen equally serious punishments. *See Bistline*, 665 F.3d at 764 (citing *United States v. Morace*, 594 F.3d 340, 347 (4th Cir. 2010)). We do not question Congress's determination that this behavior—to which Faulkner himself pleaded guilty—is harmful. Nor, we should add, has Faulkner cited authority for the proposition that attempts to produce child pornography are harmless.

While Faulkner's counts are poor candidates for grouping under the Guidelines, there remain instances where related child pornography offenses may be grouped or otherwise conflated in some respect. For instance, had Faulkner's attempt to take lascivious photos of minors been followed directly by the completion of that crime, the offenses may have merged before sentencing. *See Christian v. Wellington*, 739 F.3d 294, 298 (6th Cir. 2014) (acknowledging that the Double Jeopardy Clause requires that two charges be merged when the elements of one offense subsume those of the other). And if not, the Guidelines would compel grouping at the sentencing stage. *See* § 3D1.2 cmt n.3 ("When one count charges an attempt to commit an offense and the other charges the commission of that offense . . . the counts will be grouped together under subsection (a).").

Likewise, had Count 2 been a charge for conspiracy to produce child pornography, Faulkner might have a compelling argument that the two counts constituted "one composite harm," with the conspiracy crime coming in the same "course of conduct" that resulted in the completed crime. *See* § 3D1.2 cmt n.4. But the more analogous case here is the rape example cited above. *See id.* A defendant completes one crime towards the victim—there rape, here taking illegal photos—and the next day attempts to do it again. That sequence reveals a second opportunity to repeat a crime that already occurred, in other words, two distinct criminal acts (and thus two harms), not one course of conduct to commit a single criminal act (and thus a single harm).

The former describes today's case. Faulkner's conduct took place over the course of two days. The first offense involved only O.B. It took place in her room at night while she was sleeping. The photographs depicted O.B.'s bare vaginal area. The second offense involved a different setting. O.B. was wearing clothes different from the night before. She was with M.F., who was not photographed previously, and the two girls were seated outside, not asleep in their bedrooms: In short, a different situation that produced images capturing two young victims, not one. Against the backdrop of *Bivens*, we find that the crimes were distinct enough to make grouping the offenses inappropriate.

\* \* \* \* \*

Faulkner closes with an even more sweeping argument: His conduct should be deemed to have caused *no harm whatsoever* because M.F. and O.B. were unaware of his efforts to take lascivious photographs of them. That argument is at odds with the text of 18 U.S.C. § 2251, which does not require that the victim of a child pornography offense be aware of the offender's efforts. Had Congress intended to include victim knowledge as an element of the offense, it undoubtedly would have said so. Yet the statute's text says nothing of the sort. We have thus refused to read such a requirement into the statute. *See, e.g., United States v. Humphrey*, 608 F.3d 955, 957 (6th Cir. 2010) (affirming defendant's sentence for filming his sexual acts with an underage girl without her knowledge); *United States v. Vanderwal*, 533 F. App'x. 498, 500 (6th Cir. 2013) (denying defendant's motion for judgment of acquittal where he had surreptitiously filmed prepubescent girls without their knowledge while they used his bathroom). All the law

requires is that Faulkner specifically intended to capture lascivious images of M.F. and O.B. and took a substantial step to that end. *See United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013). He pleaded guilty to doing so and has not asked us to disturb that plea.

> B.        *Faulkner's Sentence Was Not Substantively Unreasonable.*

Faulkner next contends that his 570-month sentence is substantively unreasonable. Generally speaking, defendants who challenge their sentences as substantively unreasonable face an uphill climb. We grant considerable deference to the sentence imposed by the district court, reviewing its judgment only for abuses of discretion. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). If the district court here acted reasonably in imposing Faulkner's sentence, we must affirm its decision. *United States v. Heriot*, 496 F.3d 601, 608 (6th Cir. 2007).

As a starting point, we note that Faulkner's sentence was below the applicable Guidelines range. The Guidelines suggested that Faulkner be sentenced to life in prison, in view of his offense level of 43. *See* U.S.S.G. § 5A. Adding together the applicable statutory maximums for Counts 1 through 15, the maximum sentence the district court could have imposed on Faulkner was 320 years, *nearly 7 times greater than the sentence he ultimately received*.

We find no reason to question the district court's judgment. Faulkner's conduct was reprehensible. He sexually abused his own five-year-old niece several times while residing in his brother's home. Evading detection, he then amassed a large collection of child pornography. He associated with other like-minded individuals online, going so far as to even offer them advice on how to coax prepubescent girls into sex. Then Faulkner turned his attention to his niece's half-sister, touching her bare vaginal area as she slept, and later circulating photographs of his abusive conduct online. He did the same with other less-explicit photos depicting both girls.

Before the district court sentenced Faulkner, it took note of this unfortunate series of events along with some countervailing considerations, including Faulkner's troubled past, limited criminal history, and military service. Taking this information together, the district court opted to vary significantly downward from the life sentence recommended by the Guidelines, just not as far as Faulkner had hoped. We cannot say that decision was unreasonable. *See*

*United States v. Houston*, 529 F.3d 743, 756–57 (6th Cir. 2008) (noting that we disfavor challenges by a defendant that his sentence is too long despite a downward variance).

Nor can we credit Faulkner's citation to *United States v. Aleo*, 681 F.3d 290 (6th Cir. 2012). To be sure, *Aleo* did vacate a sentence as substantively unreasonable. But unlike today's case, where the sentence imposed fell well below the Guidelines range, *Aleo* vacated a sentence nearly two-and-a-half times greater than what the Guidelines recommended. *Id.* at 300. That case, then, is worlds apart from this one.

We recognize that Faulkner's sentence is lengthy. For better or worse, that is not unique in this setting. Congress, in conjunction with the Sentencing Commission, has decided to impose significant penalties for child pornography offenses. While Faulkner may question those policy judgments, we cannot say that his sentence is substantively unreasonable when considered against this framework.

### C.  *Faulkner's Sentence Was Not Procedurally Unreasonable.*

Lastly, Faulkner contends that his sentence was procedurally unreasonable due to the district court's refusal to lower his criminal history category despite stating that his criminal history was "thin." Here, Faulkner conflates the two distinct roles criminal history plays in sentencing: First, it determines the criminal history category aspect of the Guidelines range computation; second, the district court considers it in the § 3553(a) analysis. *See United States v. Tristan-Madrigal*, 601 F.3d 629, 636 n.1 (6th Cir. 2010).

In the first instance, criminal history is relevant at sentencing when the district court computes the Guidelines range. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Asher*, 239 F. App'x. 180, 184 (6th Cir. 2007) (holding that the district court was bound to use the conversion ratio for crack cocaine contained in the Guidelines to compute the sentencing range before choosing to vary the sentence upward or downward). With respect to Faulkner's criminal history, the Presentence Report correctly noted that Faulkner's two prior convictions for shoplifting and driving under the influence each contributed one criminal history point under U.S.S.G. § 4A1.1(c). Faulkner argued at sentencing that the district court should

reject this Guidelines-compelled criminal history computation.  But the district court would have committed reversible procedural error had it done so.  *Gall*, 552 U.S. at 51.

District courts enjoy greater discretion with respect to criminal history when assessing the § 3553(a) factors.  Although it must be rigidly computed, the resulting Guidelines range is ultimately advisory.  *Rayyan*, 885 F.3d at 440.  Weighing that range along with the § 3553(a) factors, the district court decides what sentence to impose. This is the context in which the district court stated that Faulkner's criminal history was "thin," a point underscored by the district court's Statement of Reasons form, which noted that Faulkner's criminal history was "overstated" by the Guidelines.  We see no error in the district court's consideration of those facts, or in its ultimate decision to depart downward from the Guidelines range.  *See Tristan-Madrigal*, 601 F.3d at 636 n.1.

One final point deserves mentioning.  Had any error occurred in calculating Faulkner's criminal history category (and we do not find one here), that error would have been harmless.  Errors that do not affect the ultimate Guidelines range or sentence imposed are harmless and do not require resentencing.  *See United States v. Morrison*, 852 F.3d 488, 491–92 (6th Cir. 2017) (citing *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016)).  Because Faulkner's offense level was 43, the Guidelines range was life in prison, regardless of his criminal history category, *see* U.S.S.G. § 5A, something the district court itself noted in response to Faulkner's arguments at sentencing.  Any error by the district court, in other words, would have had no effect on the ultimate sentence, and was thus harmless.  *Morrison*, 852 F.3d at 491–92.

## III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.