NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0302n.06

No. 21-2982

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jul 22, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| TIMOTHY EDWARD SWEENEY, | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BATCHELDER, WHITE, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Timothy Sweeney asked a 15-year-old girl to have sex with him for money and convinced her to send him sexually explicit photos of herself. He pleaded guilty to attempted sex trafficking of a minor and to enticing a minor to engage in sexual activity. The district court sentenced him to 300 months' imprisonment. Sweeney now argues that the court abused its discretion by imposing this lengthy prison term and that it erred in calculating his advisory guidelines sentence. But his plea agreement contained an appeal waiver that bars his challenge to his sentence and part of his challenge to the court's guidelines calculations. Any remaining guidelines errors would be harmless because they would not change his advisory guidelines sentence: life imprisonment. We thus affirm.

I

In April 2020, a few weeks after separating from his wife, Sweeney began messaging a 15-year-old girl (L.M.) through Instagram. Sweeney repeatedly attempted to persuade L.M. to engage in sex acts with him by offering her money and other items. L.M. refused. She did agree, however, to send Sweeney sexually explicit photos of herself, including photos of her genitalia. Over the next seven months, L.M. sent Sweeney some 100 explicit photos in exchange for about $800 that Sweeney paid her through Cash App.

Sweeney's illegal acts came to the attention of police on January 15, 2021. Late that night, a caller alerted the sheriff's department in a southern Michigan county that suspicious activity was occurring in a nursing home's parking lot. The responding deputies spotted Sweeney sitting alone in his car. Sweeney told the deputies that he was there with L.M. and her 15-year-old boyfriend, both of whom had gone to the bathroom. He gave evasive and inconsistent stories about what he was doing with these minors late at night, at one point suggesting that he planned to drive them many miles north to his apartment in Grand Rapids. Finding his conduct troubling because Sweeney had no relation to the teenagers, the deputies arranged for their parents to pick them up. The deputies let Sweeney go.

But a subsequent police investigation uncovered that Sweeney had solicited L.M. for sex and obtained explicit images from her. The government charged Sweeney with attempted sex trafficking of a minor (for his failed attempts to have sex with L.M.). *See* 18 U.S.C. § 1591(a)(1). It also charged him with enticing a minor to engage in sexual activity (for his successful efforts to get L.M. to send him explicit images). *See id.* § 2422(b). Sweeney pleaded guilty to both counts. As part of his plea agreement, he agreed to an appeal waiver that barred most appellate challenges to his convictions and sentence.

Sweeney's convictions required complex guidelines calculations to determine his sentence. The complexity stemmed from the fact that, according to his presentence report, he had many other victims. Apart from L.M., Sweeney had attempted to convince a 16-year-old girl (M.M.) to engage in sex acts for money. In fact, Sweeney had been in southern Michigan to pick up M.M. on the night that the police caught him with L.M and her boyfriend. He had taken these three teenagers to his apartment on the previous night so that M.M. could get comfortable with him. On the night police intercepted Sweeney, he planned to engage in a sex act with M.M. According to M.M., he had already paid her for the act.

The presentence report next noted that Sweeney had paid six girls other than L.M. to send him explicit images. M.M. told investigators that she had sent Sweeney about 40 photos or videos and that Sweeney had paid her about $10 for each one. In addition, L.M. indicated that Sweeney had convinced her to send him nude photographs of her with her friends. Some of L.M.'s pictures thus included explicit images of two other girls. M.M. also indicated that she had learned about Sweeney from two friends, both of whom had engaged in similar conduct. Lastly, another 15-year-old girl whose name came up during the investigation had stated that Sweeney paid her $40 for two photos.

The presentence report relied on these additional crimes to calculate Sweeney's guidelines sentence. The applicable guidelines for both of Sweeney's counts instructed that if "the offense" (including uncharged but related "relevant conduct") "involved more than one minor," the court should treat each crime against each minor as if it "had been contained in a separate count of conviction." U.S.S.G. §§ 2G1.3(d)(1) & cmt. n.6, 2G2.1(d)(1) & cmt. n.7. The report thus created what we have dubbed "pseudo counts" for Sweeney's conduct related to the six victims other than

L.M. *See, e.g.*, *United States v. Fleischer*, 971 F.3d 559, 566–69, 566 n.4 (6th Cir. 2020); *United States v. McCall*, 699 F. App'x 452, 456 (6th Cir. 2017).

The guideline for Sweeney's Count 1 (attempted sex trafficking of L.M.) started with a base offense level of 30. U.S.S.G. § 2G1.3(a)(2). The presentence report added two levels because Sweeney had used a computer to solicit L.M. *See id.* § 2G1.3(b)(3)(B). It added two more on the ground that Sweeney had "unduly influenced" L.M. to engage in the requested sex acts. *See id.* § 2G1.3(b)(2)(B). The report thus calculated Sweeney's total offense level on the first count as 34. In "pseudo" Count 1A, the report made the same calculations and reached the same total offense level for Sweeney's attempt to solicit M.M. for sex.

The guideline for Sweeney's Count 2 (enticing L.M. to create explicit images) started with a base offense level of 32. *Id.* § 2G2.1(a). The presentence report added six more levels because of L.M.'s age, because L.M. had engaged in a sexual act, and because Sweeney had used a computer. *See id.* § 2G2.1(b)(1)(B), (b)(2)(A), (b)(6)(B)(i). The report thus calculated the total offense level for Count 2 as 38. It then added six additional "pseudo" counts (Counts 2A through 2F) for Sweeney's enticement of M.M. and the five other girls to send him explicit images. The total offense levels for these pseudo counts ranged from 34 to 36.

To determine the combined offense level for these nine ungrouped counts, the presentence report began with Count 2—the one with the highest offense level (38). *See id.* § 3D1.4. The report then increased this offense level in light of the eight other counts by using a formula that turned the counts into "units." *Id.* Because Sweeney's other counts were all within four levels of Count 2's offense level, they each qualified as an additional "unit." *See id.* § 3D1.4(a). The presentence report thus found that Sweeney had over five total units. The guidelines indicate that

a court should add five offense levels to the count with the highest offense level in that circumstance. *Id.* § 3D1.4. So Sweeney's presentence report increased his offense level to 43.

After creating a combined offense level, the presentence report made two final calculations. It found that Sweeney qualified as a repeat and dangerous sex offender, which added five more offense levels. *See id.* § 4B1.5(b)(1). But it subtracted three levels for Sweeney's acceptance of responsibility. *See id.* § 3E1.1(a)–(b). These additions and subtractions produced a total offense level of 45. It exceeded the maximum of 43, so Sweeney's offense level became that maximum. *See id.*, ch. 5, pt. A, n.2. This level left him with a guidelines sentence of life imprisonment (despite his lack of criminal history). *See id.*, ch. 5, pt. A.

Sweeney objected to the presentence report. Among other claims, he argued that the report had wrongly applied the two-level undue-influence enhancement for Count 1 and the related Count 1A. Sweeney also objected to the use of five of the seven "pseudo" counts on the ground that they did not constitute "relevant conduct" under § 1B1.3 for his crimes against L.M. The district court overruled his objections and adopted the presentence report's calculations and guidelines range.

Before sentencing, however, the government moved the court to grant a two-level downward departure because Sweeney had substantially assisted its investigation. *See* U.S.S.G. § 5K1.1. Sweeney also moved for a downward variance. The court granted both motions. It reduced Sweeney's total offense level from 43 to 40, which reduced his guidelines range from life imprisonment to between 292 and 365 months' imprisonment. The court chose a sentence of 300 months on each count to be served concurrently.

II

On appeal, Sweeney raises both substantive and procedural objections to his sentence. But we must reject his arguments without reaching their merits. Some of Sweeney's objections are barred by his plea agreement and the rest could not affect the outcome.

*Substantive Challenge*. Sweeney asserts that the district court chose a substantively unreasonable 300-month sentence. This common type of sentencing challenge attacks the "bottom-line number," alleging that the court imposed too long a sentence when evaluated against the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019). Although we typically review such a challenge for an abuse of discretion, *see id.*, we cannot consider Sweeney's challenge at all in this case.

As part of their plea agreements, defendants commonly waive the right to appeal their sentences except on specified grounds. *See United States v. Riccardi*, 989 F.3d 476, 489 (6th Cir. 2021). We generally enforce these waivers as written. *See id.*; *United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012). We thus have repeatedly found that an appeal waiver barred a defendant's substantive-reasonableness challenge. *See, e.g.*, *United States v. Moon*, 808 F.3d 1085, 1088–90 (6th Cir. 2015); *United States v. Altunar-Jimenez*, 809 F. App'x 319, 320 (6th Cir. 2020); *United States v. Williams*, 682 F. App'x 453, 457 (6th Cir. 2017); *United States v. Stevenson*, 659 F. App'x 221, 226 (6th Cir. 2016); *United States v. Sevrey*, 634 F. App'x 545, 550–51 (6th Cir. 2015); *United States v. Jones*, 620 F. App'x 434, 441–42 (6th Cir. 2015).

The appeal waiver in this case likewise bars Sweeney's substantive-reasonableness challenge. Sweeney's plea agreement stated that he "waive[d]" his right to "appeal" his "sentence" except on five grounds. Agreement, R.35, PageID 124. He preserved the right to appeal only arguments that his sentence exceeded the statutory maximum; that the district court relied on an

6

unconstitutional factor; that the court improperly calculated his guidelines range (as long as he made the objection at sentencing); that he did not knowingly and voluntarily plead guilty; or that his attorney provided ineffective assistance. *Id.* Sweeney does not dispute that he knowingly and voluntarily waived his right to appeal. And none of the four other enumerated exceptions to the appeal waiver covers Sweeney's claim that the district court chose a substantively unreasonable sentence. Sweeney thus waived this claim.

He does not seem to contest this point. The government flagged his appeal waiver in its brief. Yet the issue went unaddressed in Sweeney's reply. If anything, then, he has forfeited any argument that his appeal waiver does not cover his substantive-reasonableness challenge. *Cf. In re Wild*, 2019 WL 11880268, at *2 (6th Cir. Apr. 1, 2019) (order); *Grosswiler v. Freudenberg-Nok Sealing Techs.*, 642 F. App'x 596, 599 (6th Cir. 2016). So we must enforce his appeal waiver as written and will not consider this challenge on appeal.

*Procedural Challenges*. This conclusion leaves Sweeney's argument that the district court miscalculated his guidelines range. Sweeney raises two alleged guidelines-calculation errors. He argues that the court improperly applied the "undue influence" enhancement when calculating the offense level for Counts 1 and 1A (the counts concerning his attempted sex trafficking of L.M. and M.M.). *See* U.S.S.G § 2G1.3(b)(2)(B). Sweeney also argues that the court wrongly added the six "pseudo" counts to Count 2 (Counts 2A through 2F) because the presentence report failed to show that the images that he obtained from any of the other victims qualified as "child pornography" under 18 U.S.C. § 2256(2)(A), (8).

These guidelines arguments fail in part on waiver grounds and in part on harmless-error grounds. Start with the waiver. Sweeney's plea agreement permitted him to challenge the district court's guidelines calculations on appeal only "if [he] objected at sentencing on that basis."

7

Agreement, R.35, PageID 124. And the government argues that he did not preserve any guidelines challenge to "pseudo" Counts 2A through 2F. In the district court, Sweeney argued that the crimes underlying four of these pseudo counts did not qualify as "relevant conduct" that a court could consider under U.S.S.G. § 1B1.3. Now, the government claims, Sweeney makes evidence-based assertions, arguing that the presentence report lacked sufficient details to establish that he even committed these other crimes. We need not resolve the government's waiver argument in full. We at least agree that Sweeney did not object to two of the pseudo counts in the district court. Specifically, Sweeney conceded that pseudo counts 2B and 2C concerning L.M.'s two friends (and the explicit photos that Sweeney obtained of them from L.M.) were sufficiently related to his crimes against L.M. *See* Sent. Tr., R.71, PageID 339, 341. Because Sweeney did not challenge the district court's reliance on these two counts when calculating his guidelines range, his appeal waiver bars any objection to them for the first time on appeal. Agreement, R.35, PageID 124.

Sweeney's failure to preserve his alleged errors for these two pseudo counts renders any other guidelines errors harmless. To prove that a sentencing error was harmless, the government must show that it did not affect a defendant's "substantial rights" because it did not change the ultimate sentence. Fed. R. Crim. P. 52(a); *see United States v. Susany*, 893 F.3d 364, 368 (6th Cir. 2018). When a guidelines error alters the defendant's advisory guidelines range, the government's task will not be "easy" because the advisory guidelines "anchor the court's discretion in selecting an appropriate sentence." *United States v. Collins*, 800 F. App'x 361, 362 (6th Cir. 2020) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 204 (2016)).

Things are different, though, when an error in the calculation of the guidelines does *not* affect the defendant's guidelines range. We routinely find these types of errors harmless. *See, e.g.*, *United States v. Hills*, 27 F.4th 1155, 1198 (6th Cir. 2022); *United States v. Castro*, 960 F.3d

857, 867 (6th Cir. 2020); *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019); *United States v. Bivens*, 811 F.3d 840, 843 (6th Cir. 2016). In one common scenario, for example, a defendant who has committed a grave crime has a total offense level that exceeds the guidelines' maximum of 43. The guidelines instruct courts to reduce this defendant's offense level to 43. U.S.S.G., ch. 5, pt. A, n.2. So if a mistaken imposition of a two-level enhancement or the mistaken failure to grant a two-level reduction would not reduce the offense level below 43, the total offense level would remain at that maximum. Our cases have repeatedly found alleged errors in this situation harmless because they would not change the ultimate guidelines sentence: life imprisonment. *See, e.g.*, *United States v. Rich*, 2021 WL 4144059, at *49 (6th Cir. Sept. 13, 2021); *United States v. Jenkins*, 821 F. App'x 504, 509 (6th Cir. 2020); *Castro*, 960 F.3d at 867; *Faulkner*, 926 F.3d at 275; *United States v. Aguilar-Andres*, 780 F. App'x 231, 234 (6th Cir. 2019).

This precedent shows that any preserved error is harmless in Sweeney's case. To illustrate why, we begin with two assumptions. Assume that Sweeney correctly argues that the district court should not have imposed the undue-influence enhancement for Counts 1 and Counts 1A. *Cf. Jenkins*, 821 F. App'x at 509. Assume also that he preserved his challenges to the four other pseudo counts connected to Count 2 and that these challenges had merit such that pseudo counts 2A, 2D, 2E, and 2F should have been excluded from the guidelines calculation.

Even with these assumptions, Sweeney's guidelines sentence would remain the same. The offense level for Counts 1 and 1A would change from 34 to 32 (base offense level of 30 plus 2 for the use of a computer). *See* U.S.S.G. § 2G1.3(a)(2), (b)(3)(B). The offense level for Count 2 would remain at 38 and the offense levels for the two remaining pseudo counts connected to Count 2—2B and 2C—would remain at 36 and 34. To calculate Sweeney's combined offense level, a court must start with Count 2's highest offense level (38). *See id.* § 3D1.4. The court then must

identify the number of "units" for all counts. Count 2 is one "unit." The remaining counts qualify as a unit each if their offense levels fall within four of the highest offense level, but they qualify as only a half unit each if their offense levels fall within five to eight of the highest offense level. *See id.* § 3D1.4(a)–(b). The two pseudo counts connected to Count 2 thus each add a unit. But Counts 1 and 1A now each add only a half unit. The counts thus would total four units (1+1+1+.5+.5), and the guidelines would require the court to "add 4 levels" to Count 2's offense level, resulting in an offense level of 42. *See id.* § 3D1.4. Lastly, the court would have to apply the five-level enhancement because Sweeney was a repeat and dangerous sex offender (under § 4B1.5(b)(1)) and the three-level reduction for his acceptance of responsibility (under § 3E1.1). So he would now have a total offense level of 44 (rather than 45). This level would still be reduced to 43 (and a guidelines sentence of life imprisonment). *Id.* ch. 5, pt. A & n.2.

Under these calculations, Sweeney's preserved guidelines arguments would not affect his total offense level. And his claimed errors in this case are just like the errors that many of our cases have treated as harmless because they would not reduce a defendant's total offense level below the maximum. *See, e.g.*, *Rich*, 2021 WL 4144059, at *49; *Jenkins*, 821 F. App'x at 509; *Castro*, 960 F.3d at 867; *Faulkner*, 926 F.3d at 275; *Aguilar-Andres*, 780 F. App'x at 234.

Sweeney agrees that he must win *all* of his guidelines arguments (including those that we have found waived) for those arguments to affect his guidelines sentence. But he says that any individual pseudo-count error suffices to require resentencing because the district court highlighted that his crimes involved "seven" victims when choosing the specific 300-month sentence. Sent. Tr., R.71, PageID 362. Without those pseudo counts, his argument goes, there would be fewer victims—a fact that could have led the court to vary further downward from the guidelines sentence when picking a specific prison term.

His reasoning would upend this entire line of harmless-error cases. A defendant can always claim that, although some mistaken guidelines calculation did not alter the ultimate guidelines range, it still might have affected the court's residual sentencing discretion. Consider *Rich*. There, we assumed that the sentencing court had wrongly considered a brutal beating to be part of a defendant's "relevant conduct." *See* 2021 WL 4144059, at *11, *49. But we went on to find any error harmless because the defendant's offense level would have remained at 43 even without considering this beating. *Id.* at *49. We did not inquire into whether the district court might have relied on this conduct when choosing the defendant's specific sentence. *See id.*

Perhaps an error that did not affect the advisory guidelines range could still be harmful if the record showed that the court had relied on the erroneous facts that undergirded the guidelines error when choosing a sentence. But we need not decide this issue here because Sweeney's claim in this regard is simply a backdoor attack on the substantive reasonableness of the district court's 300-month sentence. Sweeney's plea agreement thus bars the claim. Recall that his appeal waiver allows him to raise only a limited number of arguments on appeal, including that "the district court incorrectly determined the Sentencing Guidelines range." Agreement, R.35, PageID 124. His current claim says that the district court *correctly* determined that range but that its alleged factual errors about the number of victims could have affected the sentence's "bottom-line number[.]" *Lynde*, 926 F.3d at 279. Because his argument presumes that the district court properly calculated the guidelines range, it does not fall within the appeal-waiver exception for a claim that the court incorrectly calculated that range. *See Moon*, 808 F.3d at 1088–90; *Altunar-Jimenez*, 809 F. App'x at 320. Sweeney thus waived the argument when he pleaded guilty.

\* \* \*

In sum, Sweeney's appeal waiver bars our consideration of his substantive-reasonableness challenge and his challenge to the inclusion of two "pseudo" counts. Even if his remaining challenges are valid, his guidelines sentence would remain the same. We thus affirm.