NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0079n.06

No. 23-5224

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**FILED**
Feb 23, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| ISAIAH WIMBERLY, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: BATCHELDER, CLAY, and DAVIS, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge**. Isaiah Wimberly, who divested himself of certain evidence before detectives arrested him on drug-dealing charges, appeals his sentence, claiming that the district court erred by including as relevant conduct his possession of 390.7 grams of methamphetamine, which increased his base offense level and sentence. Because the district court did not err, we **AFFIRM**.

## I.  Background and Procedural History

On September 28, 2021, Lexington Metro Police Detectives surveilled and arrested Wimberly pursuant to active arrest warrants. During a search of Wimberly's vehicle, the Lexington Police (LP) found several firearms. After Wimberly consented to a search of his apartment, the police found 90.241 grams of fentanyl and 12.62 grams of cocaine in addition to one more firearm.

On April 3, 2022, while Wimberly was on bond related to the Kentucky charges, LP detectives learned that Wimberly was selling drugs from a hotel room. The detectives obtained a

search warrant for Wimberly's hotel room.  Before executing the warrant, the detectives saw Wimberly arrive at the hotel.  He was wearing a black hooded sweatshirt with a "kangaroo pocket" that appeared to contain "something heavy."  Upon noticing the detectives, Wimberly fled into the nearby woods.  The detectives lost sight of Wimberly but later found and arrested him as he attempted to run across the I-75 highway.  At that time, he was no longer wearing his black hooded sweatshirt with the kangaroo pocket.

As a result of Wimberly's April 3 arrest and the search of his hotel room, LP detectives found 38.999 grams of fentanyl.  After searching his vehicle, the detectives found an additional 27.842 grams of fentanyl.  On April 4, 2022, the detectives searched the area through which Wimberly had fled.  The detectives found a black hooded sweatshirt matching the one that Wimberly was wearing when he fled from the police and yellow and blue pills.  Images of pills on Wimberly's cellphone matched the pills found in the woods.  The blue pills found in the woods matched blue pills found in the discarded black hooded sweatshirt.  Detectives also found a baggie in the creek area through which Wimberly escaped, containing 390.7 grams of methamphetamine in the form of yellow pills.  In total, LP detectives found 1,176.629 kilograms of converted drug weight.[1]

A federal grand jury indicted Wimberly on three counts: (1) knowingly and intentionally possessing with intent to distribute 40 or more grams of fentanyl, a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1); (2) knowingly and intentionally possessing with intent to distribute a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1); and

---

[1] LP detectives found 90.241 grams of fentanyl and 12.62 grams of cocaine from the search of Wimberly's apartment. They found 38.999 grams of fentanyl from the search of Wimberly's hotel room and another 27.842 grams of fentanyl from searching Wimberly's car.  And they found 390.7 grams of methamphetamine in the woods through which Wimberly escaped.  Together, the found drugs' weight translates to 1,176.629 kilograms of converted drug weight.

(3) possessing firearms after being convicted of a crime punishable by imprisonment exceeding one year in violation of 18 U.S.C. § 922(g)(1).

Wimberly entered into a plea agreement, pursuant to which he pled guilty to Counts One and Three, and the Government dismissed Count Two. The plea agreement set the relevant converted drug quantity at a minimum of 394.95 kilograms, which resulted in a base offense level of 24. Wimberly reserved the right to challenge any drug quantity above 394.95 kilograms attributed to him while the United States reserved the right to argue that the relevant converted drug quantity is greater than 400 kilograms. Wimberly also reserved the right to appeal any aspect of the sentence resulting in incarceration exceeding 105 months. [2]

The PSR recommended that the 390.7 grams of methamphetamine found on April 4 be attributed to Wimberly. This raised Wimberly's base offense level to 29. Wimberly objected. The district court overruled the objection and adopted the PSR as written, which resulted in a sentence of 152 months. The applicable sentence range for Wimberly's crimes was 140 to 175 months. U.S.S.G. § 5A.

At sentencing, the district court found by a preponderance of the evidence—including "the matching blue pills, . . . the sweatshirt, . . . the fact that the sweatshirt had those blue pills, . . . the evidence that's on the cellphone as it relates to these packages, . . . [and] what we know must be happening if a defendant has on himself additional contraband and he's fleeing"—that the yellow methamphetamine pills found on Wimberly's escape path on April 4 were Wimberly's. The district court therefore included the additional methamphetamine as relevant conduct towards Wimberly's sentence. *See* U.S.S.G. § 1B1.3(a)(2). The district court then analyzed the 18 U.S.C. § 3553(a)

---

[2] Pursuant to the plea agreement, Wimberly would have potentially served up to 105 months in prison at an offense level of 24.

sentencing factors, focusing on the drug weight, the seriousness of Wimberly's crimes, his criminal history, and the fact that he fled from the police, while out on bond for state law criminal charges, to avoid arrest for the instant drug activity. The court also considered Wimberly's commitment to his children and positive priorities. Wimberly appeals his sentence based on the drug weight.

## II.     Legal Standard

We review district court sentencing determinations for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence must be both procedurally and substantively reasonable. *Id.*; *United States v. Gates*, 48 F.4th 463, 468–69 (6th Cir. 2022).

## III.     Discussion

On appeal, Wimberly argues that his sentence is both procedurally and substantively unreasonable. We take each argument in turn.

### a.  Procedural Reasonableness

We review procedural reasonableness by examining "the district court's factual findings for clear error, its application of the Guidelines to those facts de novo, and its ultimate sentencing determination for abuse of discretion." *United States v. Benton*, 957 F.3d 696, 700–01 (6th Cir. 2020); *see also Gates*, 48 F.4th at 469. A district court's sentencing determination is procedurally reasonable when it properly calculates the Guidelines range, considers the § 3553(a) factors, makes factual determinations that are not clearly erroneous, and explains the sentence it imposes. *Benton*, 957 F.3d at 700 (citation omitted).

Wimberly argues that the additional drug weight added to his offense-level calculation for the methamphetamine pills found on his escape path makes his sentence procedurally unreasonable. He argues that because he never "expressly or impliedly stated that he possessed"

the pills, the pills cannot be attributable to him, and because they were not found until a day after his arrest in an area known "as a common outdoor location for people to use illegal drugs" and no one saw him with the pills, the pills could not be his. His arguments fail.

District courts need only establish relevant drug weight by a preponderance of the evidence. *United States v. Mosley*, 53 F.4th 947, 962 (6th Cir. 2022); *see also United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008) (explaining that even an estimate of drug weight by a preponderance of the evidence will suffice). We review the district court's finding of drug weight for clear error. *Mosley*, 53 F.4th at 962. Findings are clearly erroneous when, after reviewing the record, we are left with "the definite and firm conviction that a mistake has been committed." *United States v. Meek*, 32 F.4th 576, 579 (6th Cir. 2022) (quoting *United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020)). We find no such error here.

When LP detectives first saw Wimberly, he was wearing a black hoodie sweatshirt with a heavy-looking kangaroo pocket. When he was arrested, he was not wearing his hoodie. The next day, when LP detectives found the discarded black hooded sweatshirt with a kangaroo pocket—on the path of Wimberly's flight—methamphetamine pills were nearby. Moreover, Wimberly's phone had images of pills matching those found in the woods, and the blue pills found in the discarded black hooded sweatshirt matched those found in the woods on his escape path that were next to the yellow methamphetamine pills. Based on these facts, the district court reasonably concluded that Wimberly had divested himself of the additional drugs while fleeing from LP detectives. This finding is not clearly erroneous. *See United States v. Smith-Kilpatrick*, 942 F.3d 734, 746–47 (6th Cir. 2019) (explaining that even if a different sentencing judge could reasonably hold the criminal defendant responsible for a lesser drug amount, there is no clear error).

Moreover, the district court correctly concluded that Wimberly's possession of the methamphetamine pills constituted relevant conduct to his charged offenses. "A defendant's uncharged trafficking offense for one controlled substance can constitute relevant conduct when the defendant is sentenced for trafficking in another," provided that the two offenses are "part of the same course of conduct or common scheme or plan." *Benton*, 957 F.3d at 701 (citations omitted). The district court did not err in finding by a preponderance of the evidence that Wimberly possessed these methamphetamine pills while fleeing from LP detectives executing a search of his hotel room for other drugs, and including them as relevant conduct in calculating the sentence.

### b. Substantive Reasonableness

Substantive reasonableness relates to the length of the sentence itself based on balancing the § 3553(a) factors. *United States v. Clayton*, 937 F.3d 630, 642–44 (6th Cir. 2019); *United States v. Thomas*, 933 F.3d 605, 612–13 (6th Cir. 2019); *see also Gall*, 552 U.S. at 49–50 (explaining that district courts should analyze the § 3553(a) factors to make individualized assessments of each criminal defendant). When reviewing a sentence for substantive reasonableness, we give significant deference to the district court's determination. *United States v. Faulkner*, 926 F.3d 266, 273 (6th Cir. 2019). Therefore, challenges to substantive reasonableness face a "high bar," particularly when the sentence falls within the applicable range. *Thomas*, 933 F.3d at 613; *Faulkner*, 926 F.3d at 273 (explaining the significant deference for sentences within the applicable range). We may reverse for substantive reasonableness only when the district court abuses its significant discretion. *See United States v. Lanning*, 633 F.3d 469, 473–76 (6th Cir. 2011).

Wimberly argues that his sentence was unreasonably lengthened because "a balanced consideration . . . supports a sentence less than 152 months." He argues that his crimes produced

only public harm, not harm to specific individuals, and he also appealed to family considerations. His arguments fail.

Wimberly's sentence of 152 months is squarely within the applicable range for his total offense level of 29: 140 to 172 months incarceration. U.S.S.G. § 5A. The district court's calculation of his sentence, therefore, is entitled to deference. *See Faulkner*, 926 F.3d at 273; *Benton*, 957 F.3d at 704; *see also Gall*, 552 U.S. at 51 ("[S]entencing judge[s] [are] in a superior position to find facts and judge their import under § 3553(a) in [each] individual case."). The district court considered Wimberly's criminal past, his conduct related to the charge at hand,[3] the severity of his drug-related crimes, and his future aspirations. Wimberly's arguments on appeal amount to policy disagreements with the Guidelines, which will not prove that the district court abused its discretion. *See Mosley*, 53 F.4th at 965. The sentence is substantively reasonable.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[3] Related to the charge at hand, Wimberly fled from law enforcement, and he committed this criminal activity after posting bond related to his state law charges.