# United States Court of Appeals
## For the First Circuit

No. 04-1309

UNITED STATES,

Appellee,

v.

KENNETH PROCHNER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Lipez, Circuit Judge.

Jeanne M. Kempthorne for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

July 22, 2005

**CAMPBELL**, <u>Senior Circuit Judge</u>.  Kenneth Prochner appeals from his sentence on a conviction of access device (credit card) fraud.  Prochner pled guilty to knowingly possessing fifteen or more unauthorized credit card numbers with the intent to defraud in violation of 18 U.S.C. § 1029(a)(3).  The district court sentenced him to 25 months in prison and three years of supervised release, and ordered restitution in the amount of $2,610.19.  The sentence was based in part on enhancements for the amount of loss, number of victims, special skill, and obstruction of justice.[1]  The district court also imposed special conditions of supervised release, including conditions that Prochner undergo evaluation for sex offender treatment; that he not engage in an occupation, business or profession that would require direct supervision of minors; and that he have no unsupervised contact with minors.

Prochner argues for the first time on appeal that his sentence should be vacated and the case remanded for resentencing under <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005).  He also challenges the enhancement for use of a special skill, the special conditions that he undergo evaluation for sex offender treatment

---

[1]Without the enhancements, the guideline sentencing range for Prochner, who had no criminal history, would have been zero to six months.

and refrain from certain contact with minors, and the loss calculation for purposes of awarding restitution.[2]

I.

A.  The Arrest

On August 20, 2002, Prochner was trying to enter Canada from New York when Canadian law enforcement officers conducting border inspections discovered that he was carrying papers and a notebook containing numerous credit card numbers. Further investigation revealed that the credit card numbers had been reported as stolen or lost and that fraudulent activity had been reported on the accounts. Prochner did not have the permission of the credit card accounts' owners to use or possess the credit card numbers. After being advised of his rights, Prochner admitted that he had obtained the credit card numbers on the Internet. In a written statement to law enforcement, he explained that he accessed website order logs to obtain the credit card numbers and then accessed channels where he determined that the numbers were still valid.

In addition to the credit card numbers, Prochner had in his possession a handwritten journal that included references to adolescent males.

---

[2]Parts of the record before us are under seal. Sealed materials have been fully considered even if not set out in detail in this opinion.

B. <u>The Plea and Sentencing</u>

On July 24, 2003, Prochner pled guilty in the United States District Court for the District of Massachusetts to the one-count indictment, which charged him with possessing 15 or more unauthorized credit card numbers with the intent to defraud. <u>See</u> 18 U.S.C. § 1029(a)(3). According to the government, Prochner possessed 34 unauthorized credit card numbers and had used at least one to purchase airline tickets and to stay at a hotel. Prochner agreed with most of the facts but argued that the list of unauthorized credit card numbers he had in his possession at the time of his arrest had only 16 numbers written twice, not the 34 numbers the government alleged.

The presentence report (PSR) determined that Prochner's base offense level was 6. U.S.S.G. § 2B1.1(a).[3] The PSR added 4 levels for the loss of $17,000 ($500 multiplied by 34 credit card numbers), <u>id.</u> §§ 2B1.1(b)(1)(C), 2B1.1, cmt. n.2(F)(i); 2 levels for the number of victims (between 10 and 50), <u>id.</u> § 2B1.1(b)(2)(A); 2 levels for the use of a special skill, <u>id.</u> § 3B1.3; and 2 levels for obstruction of justice, <u>id.</u> § 3C1.1. The resulting offense level totaled 16. Because Prochner had no prior

---

[3]The PSR calculated the guideline sentencing range using the Guidelines in effect at the time of the commission of the instant offense -- the Guideline Manual issued November 1, 2001 -- because that version was more beneficial to the defendant than the version of the Guidelines in effect at the time of sentencing. <u>See</u> <u>United States</u> v. <u>Harotunian</u>, 920 F.2d 1040, 1041-42 (1st Cir. 1990).

convictions and zero criminal history points, he was assigned to Criminal History Category I. The resulting guideline sentencing range was 21 to 27 months. The Probation Office calculated that Prochner owed $2,610.19 in restitution.

Prior to sentencing, Prochner objected to the enhancements for the amount of loss, special skill, and obstruction of justice, as well as the restitution figure. He argued that he should have been granted a reduction for acceptance of responsibility, and sought downward departures because of his mental and emotional condition, see U.S.S.G. § 5H1.3, and family and community ties, id. § 5H1.6.

After a hearing, the district court sentenced Prochner on January 21, 2004. The court rejected the objections to the PSR and denied Prochner's requests for downward departure. The court sentenced Prochner to 25 months in prison and three years of supervised release, and ordered him to pay restitution in the amount of $2,610.19. The court recommended that Prochner be designated to a facility where he could undergo sex offender evaluation. It also imposed special conditions of supervised release, including: (1) that Prochner "participate, if directed to do so by the Probation Office and the Court, in a sex-offender-specific treatment program," (2) that he be "prohibited from engaging in any occupation, business or profession that would require direct supervision of children under the age of 18," and

(3) that he be prohibited from "hav[ing] any unsupervised contact with anyone under the age of 18."

## II.

### A. Booker Challenge

Prochner argues that we should remand his case for resentencing in light of United States v. Booker, 125 S. Ct. 738 (2005).[4] At the invitation of this court, both parties submitted supplemental briefing after the Supreme Court's decision in Booker. As Prochner concedes, he did not raise any question in the district court concerning the constitutionality of the Guidelines nor of their application to his sentence under Apprendi v. New Jersey, 530 U.S. 466 (2000), or Blakely v. Washington, 124 S. Ct. 2531 (2004). Accordingly, we review his Booker contentions for plain error. United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005).

Prochner must satisfy the four-prong test in United States v. Olano, 507 U.S. 725 (1993): that there is (1) an error (2) that is plain, and that the error (3) affects substantial rights and (4) seriously impairs the fairness, integrity, or public

---

[4]Prochner was recently released from prison after having fully served his prison sentence. Although Prochner is no longer incarcerated, this appeal is not moot. Prochner's sentence included a three-year term of supervised release, which he is now serving. Prochner also faces a restitution order that he challenges in this appeal. He, therefore, has a continuing stake in the outcome of this appeal. See, e.g., United States v. Molak, 276 F.3d 45, 48-49 (1st Cir. 2002) (sentencing appeal was not moot where the defendant faced a term of supervised release and a restitution order).

reputation of judicial proceedings.  Id. at 732.  The first two prongs are met because the defendant's sentence was imposed under mandatory Guidelines.  Antonakopoulos, 399 F.3d at 77.  To meet the third prong, Prochner must show there is a "reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime."  Id. at 75; see also United States v. Heldeman, 402 F.3d 220, 224 (1st Cir. 2005) (describing the Booker plain error inquiry as whether "there is reasonable indication that the district judge might well have reached a different result under advisory guidelines").

In support of a remand for resentencing, Prochner argues that the district court made the following findings enhancing his sentence (beyond that authorized by facts admitted by him) in violation of the Sixth Amendment:  (1) the amount of loss, (2) number of victims, (3) special skill, and (4) obstruction of justice.  We said in Antonakopoulos, however, "that the judge found additional facts which raised the sentence authorized solely by the jury verdict or guilty plea--in our view is insufficient to meet the third and fourth Olano prongs on plain-error review."  399 F.3d at 79.[5]

---

[5]If the district court had erred in making the factual findings underlying these enhancements and, as a result, misapplied guideline enhancements in a way that increased Prochner's sentence, the errors would justify resentencing even under our pre-Booker precedent.  United States v. Serrano-Beauvaix, 400 F.3d 50, 54 (1st

More to the point, he also argues there is a reasonable probability that the district judge, in an advisory Guidelines system, would have reached a different result. See Heldeman, 402 F.3d at 224. At sentencing, the district judge considered and rejected Prochner's requests for downward departures based on mental and emotional condition and family and community ties. After reviewing the report prepared by Prochner's mental health expert, the judge noted that "[the expert] doesn't conclude that he's mentally unbalanced in the real sense. She thinks that he's depressed, which, of course, I am sometimes, too." The judge also stated that the expert "concludes the defendant, obviously, has troubles, but they are troubles that manifest themselves more in a state of depression than they do really in terms of the kind of mental fragility or disturbance that might, under the guidelines -- it's not a terribly encouraged factor -- but might under the guidelines qualify for a downward departure." These comments indicate that the judge denied Prochner's request for a downward departure because of skepticism that he suffered from a mental

Cir. 2005). Here, however, Prochner does not contest the factual bases for any of the enhancements except special skill. See infra Part II.B (discussion regarding special skill). The obstruction of justice enhancement was premised on facts admitted by Prochner. The amount of loss was based on the number of credit card numbers. See U.S.S.G. § 2B1.1, cmt. n.2(F)(i). At the plea hearing, Prochner disputed that he had 34 credit card numbers, but he failed to renew that objection at sentencing and, therefore, waived it. Finally, Prochner did not dispute the number of victims enhancement.

condition serious enough to warrant a downward departure. The judge went on to say, "Beyond that, I frankly don't see any basis for a downward departure that otherwise applies in the case." He then sentenced Prochner to the middle of the 21 to 27 month range.

While the district court made these comments in the context of considering whether to grant a downward departure on grounds "not . . . terribly encouraged" under the guidelines, rather than pursuant to its greater discretion to consider such mitigating factors in an advisory guidelines regime, nothing suggests that the mandatory nature of the guidelines prevented imposition of a lesser sentence in this case. Indeed, without even departing downward, the court could have imposed a four-months lesser sentence under the existing guidelines range. See, e.g., United States v. Ayala Pizarro, 407 F.3d 25, 29-30 (1st Cir. 2005). On this record, we see no reasonable probability that a more lenient sentence would be imposed under advisory guidelines should the case be remanded. See Antonakopoulos, 399 F.3d at 75.

As for the special skill enhancement, Prochner contends that "the district court made a sentencing error under the Guidelines, the correction of which ordinarily would have led to a lower sentence in the pre-Booker era." Id. at 81. We turn now to this contention, concluding there was no such error.

B.  Special Skill Enhancement

Prochner contends the court erred in finding that, to facilitate the offense, he used a "special skill," as defined in U.S.S.G. § 3B1.3, to obtain the credit card numbers.  This Court reviews the district court's legal interpretation of the term "special skill" de novo and its underlying factual determinations for clear error.  United States v. Montero-Montero, 370 F.3d 121, 123 (1st Cir. 2004).

The Guidelines direct that a two-level enhancement is applied "[i]f the defendant . . . used a special skill, in a manner that significantly facilitated the commission or concealment of the offense."  U.S.S.G. § 3B1.3.  A "special skill" is defined as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing."  Id. § 3B1.3, cmt. n.3.  Examples include "pilots, lawyers, doctors, accountants, chemists, and demolition experts."  Id.

We have held that a defendant need not necessarily have formal education or training in order to be found to possess a special skill.  See, e.g., Montero-Montero, 370 F.3d at 123; United States v. Nelson-Rodriguez, 319 F.3d 12, 58 (1st Cir. 2003); United States v. Noah, 130 F.3d 490, 500 (1st Cir. 1997).  A special skill may also be acquired through experience or self-tutelage.  Noah, 130 F.3d at 500 (finding that a self-taught, professional tax

preparer utilized a special skill in preparing and electronically filing tax returns).

The district court adopted the PSR's conclusion that Prochner "used self-taught computer skills to 'hack' into website order logs." Prochner argues, however, that there is no evidence that he has education or training (even self-taught) in computers. But a court can reasonably infer requisite self-education from the nature and extent of the skill possessed. Here, Prochner's own description of what he did and could do to hack into secure websites and purloin data revealed a high and unusual level of computer know-how. The court could infer that this came from self-tutelage and experience if not from more formal training.

In his written statement to law enforcement at the time he was arrested, Prochner explained how he had obtained the credit card numbers:

> After accessing the internet, via telnet and MIRC/PIRCH and accessing websites['] order logs via Cart32 (internet credit card ordering programs), [I] scanned twenty some[] credit cards . . . . Credit cards can be checked for validity via bots (i.e.[,] scripts that check cards are still active/inactive), and I used a (MIRC) based program via Windows 98SE, on an Undernet channel and a Dalnet based channel to check three or four AMEX cards and found them to be "extremely" valid.

Prochner went on to elaborate on what he called "carding," including how websites use SSL encryption, how one can rewrite the websites' "cgi scripts" which ultimately hold the "logs" for credit card orders for a particular website, and how one can download an

international chat client to access thousands of channels where one can check the validity of all kinds of credit card numbers.  He stated that these channels are "where the true criminals are." Prochner went on to explain that "[he] can easily access these places [at] any computer [at] any time of the day, via a Windows Based program."  He also claimed that "[e]ven without log orders or hacking (for lack of a better word) tools, a novice Internet surfer can access these channels and still get hundreds of credit cards in less than 2 [hours]."

A judge might reasonably take with a grain of salt Prochner's assertion that even "a novice Internet surfer" could do what he indicated.  But even if so, we have said that "nothing in the guidelines suggests that the specialness of the faculty necessarily hinges on the complexity of the task to be performed." Noah, 130 F.3d at 500.  "[A] skill can be special even though the activity to which the skill is applied is mundane."  Id.  The critical question is "whether the defendant's skill set elevates him to a level of knowledge and proficiency that eclipses that possessed by the general public."  Id.

Focusing on that critical question, Prochner's description of the processes to obtain the credit card numbers amply supports the district court's conclusion that Prochner's special skills, including the ability to "hack" into website order logs and computer networks and to re-write "cgi scripts," exceed

the knowledge of the average Internet user. Even without expert evidence, Prochner's affidavit supports finding a level of sophistication well beyond the ordinary. We are unable to say, therefore, that the district court's determination that Prochner possessed a special skill not possessed by members of the general public is clearly erroneous.

We recognize there may be cases where a particular ability, even if not generally possessed by members of the public, may be so limited in kind or scope as to fall outside the purview of U.S.S.G. § 3B1.3. But sophisticated computer aptitude like Prochner's evidences a skill of sufficient breadth and applicability as to be found to come within the guideline. It is true that some courts outside this circuit have limited the category of cognizable special skills more strictly. Compare, e.g., United States v. Aubin, 961 F.2d 980, 984 (1st Cir. 1992) (trained service repairman for ATMs possessed a special skill facilitating ATM robbery), with United States v. Harper, 33 F.3d 1143, 1151-52 (9th Cir. 1994) (knowledge of ATMs gained during employment insufficient). Courts in the Sixth and Ninth Circuits have, on occasion, gone quite far in insisting, as a sine qua non, upon an extensive amount of formal education, training and licensing. See, e.g., United States v. Lee, 296 F.3d 792, 798-99 (9th Cir. 2002); United States v. Godman, 223 F.3d 320, 322-23 (6th Cir. 2000). As noted, we do not go so far. Where the record

supports a finding of a skill of sufficient kind and scope at a level well beyond that of a member of the general public, we will affirm the reasonable judgment of the district court. The Ninth Circuit's own case of United States v. Petersen, 98 F.3d 502 (9th Cir. 1996), found a special skill in circumstances fairly similar to those here. See id. at 504 (defendant's ability to "'hack[]' into credit reporting services to obtain information which he used to order fraudulent credit cards" warranted special skill enhancement).

We affirm the district court's finding of a special skill enhancement.

C. Special Conditions of Supervised Release

For the first time on appeal, Prochner challenges as abuses of discretion three of the special conditions of supervised release imposed by the district court: (1) that he "participate, if directed to do so by the Probation Office and the Court, in a sex-offender-specific treatment program"; (2) that he is "prohibited from engaging in any occupation, business or profession that would require direct supervision of children under the age of 18"; and (3) that he refrain from "hav[ing] any unsupervised contact with anyone under the age of 18."

This Court ordinarily reviews the district court's imposition of a special condition of supervised release for abuse of discretion, but if the issue was forfeited, review is for plain

-14-

error.  United States v. York, 357 F.3d 14, 19 (1st Cir. 2004).  As Prochner concedes, he "did not lodge [with the district court] an express objection" to the special conditions.  He argues, nevertheless, that "his failure to do so should be excused in light of the court's statement" during an in-chambers conference just before the beginning of the sentencing hearing that it was "having trouble finding anything in the record" suggesting that he has a problem with children.  We are not persuaded.  A judge's sentencing determinations after or at the end of a hearing take priority over earlier remarks which may be based on incomplete information or simply thrown out to invite response or test the waters.  Prochner forfeited his right to object to the special conditions by not objecting promptly after announcement of the conditions.  Had he done so, the district court would have been able to reconsider its proposed judgment in light of his objection and, if persuaded, modify it.  See, e.g., id.; United States v. Mansur-Ramos, 348 F.3d 29, 32 (1st Cir. 2003).  The mere beginning ruminations of the court plainly did not cure Prochner's later failure to state, once the court's intent became manifest, that he was in any way bothered by the specified conditions.  We review, therefore, solely for plain error.  See Olano, 507 U.S. at 732.

### 1.  Sex Offender Treatment Program

Prochner now argues that the district court erred in imposing the special condition that he participate, if so directed

by the Probation Office and the Court, in a sex offender specific treatment program, because his conviction did not involve a sex-related offense and he has never been accused of sexual assault.

A sentencing judge has the authority to impose any condition of supervised release that is "reasonably related to (1) the defendant's offense, history, and characteristics; (2) the need to deter the defendant from further criminal conduct; (3) the need to protect the public from further crimes by the defendant; and (4) the effective educational, vocational, medical, or other correctional treatment of the defendant." York, 357 F.3d at 20; see 18 U.S.C. § 3583(d)(1) (incorporating by reference 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)); U.S.S.G. § 5D1.3(b)(1). Although these factors are connected by the "and" conjunction, see 18 U.S.C. § 3583(d)(1); U.S.S.G. § 5D1.3(b)(1), "the critical test is whether the challenged condition is sufficiently related to one or more of the permissible goals of supervised release." York, 357 F.3d at 20 (quoting United States v. Brown, 235 F.3d 2, 6 (1st Cir. 2000)) (emphasis in York); see also United States v. Barajas, 331 F.3d 1141, 1146 (10th Cir. 2003) (noting that every circuit to have decided the issue has adopted this interpretation notwithstanding the conjunction "and").

Thus, the fact that the special condition of sex offender treatment is not related to the crime of conviction does not, by itself, render the condition invalid. See York, 357 F.3d at 20.

-16-

Nothing contained in the statute underlying U.S.S.G. § 5D1.3 limits the condition of sex offender treatment just to individuals convicted of sex offenses. Id.; see 18 U.S.C. § 3583.

There are, to be sure, limitations on the district court's power to impose special conditions of supervised release. The condition can "involve[] no greater deprivation of liberty than is reasonably necessary" to achieve the purposes of supervised release, and it must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(2), (3); U.S.S.G. § 5D1.3(b)(2). Moreover, the court's decision to impose the condition must have adequate evidentiary support in the record. York, 357 F.3d at 20; Brown, 235 F.3d at 6.

While the record contains no direct evidence that Prochner has engaged in inappropriate conduct with minors, we find record support for imposition of the requirement that Prochner undergo evaluation for possible sex offender treatment. Prochner's work history shows frequent contact with young boys. He was a YMCA youth sports director, and he ran a soccer program and a snowboarding program. Entries in the journal Prochner possessed at the time of his arrest indicate that he may have had, or, at minimum, desired to have, sexual relationships with adolescent males. Prochner took the position that these entries were simply literary expressions. A report by Prochner's mental health expert

and an evaluation by a clinical social worker, however, suggest that Prochner has a potential problem with adolescent males.

Given this evidence, the court could reasonably believe that Prochner might pose a threat to children, and that evaluation for participation in a sex offender treatment program, and participation if further ordered, was reasonably related to the purposes of supervised release. See York, 357 F.3d at 20. As noted, such purposes include the need to deter further criminal conduct, the need to protect the public from further crimes by the defendant, and the need to provide the defendant with needed training or effective correctional treatment. See 18 U.S.C. § 3583(d)(1); U.S.S.G. § 5D1.3(b)(1). The condition here was reasonably related both to the need, while Prochner was still under supervision, to protect the public from future potential crimes by Prochner (who had already committed a serious crime, albeit of a different kind) and the need to provide Prochner with whatever treatment he might need.

Finally, the special condition relative to sex offender treatment did not involve, in Prochner's case, any greater deprivation of liberty than is reasonably necessary for the purposes of supervised release. See 18 U.S.C. § 3583(d)(2), (3); U.S.S.G. § 5D1.3(b)(2). The district court did not require Prochner to register as a sex offender. The government reasonably interprets the court's order as directing Prochner to participate

-18-

in a sex offender treatment program only if, after a sex offender evaluation, the Probation Office and the Court conclude that participation is appropriate. When the district judge imposed the sentence, he recommended that Prochner be designated to a facility where he could undergo a sex offender evaluation. The court further stated that Prochner would only be required to participate, "if directed to do so by the Probation Office and the Court."

In conclusion, the treatment condition is not unreasonable nor do we think the court committed plain error in imposing it.[6]

2. Contact with Minors

Prochner also complains about the special conditions limiting his contact with minors during the term of supervised

---

[6]Prochner relies on United States v. Scott, 270 F.3d 632 (8th Cir. 2001), in which the Eighth Circuit held that it was an abuse of discretion to require sex offender treatment as a condition of supervised release, because the only evidence of sexual misconduct was a single conviction fifteen years old, there was no evidence the defendant had a propensity to commit future sexual offenses, and the condition was not reasonably related to the crime of conviction. Id. at 636. In contrast, in the instant case, the evidence supporting the condition of sex offender evaluation -- albeit falling short of convictions for, or even accusations of, actual sexual misconduct -- is recent, and includes evaluations by a mental health expert and a licensed clinical social worker in the last three years. See also York, 357 F.3d at 20 n.5 (declining to follow Scott). Prochner also relies on United States v. T.M., 330 F.3d 1235 (9th Cir. 2003), which, like Scott, is distinguishable. There, the defendant's sex offender-related crimes were twenty and forty years old, and there was no evidence of current involvement in sex crimes. Id. at 1239-41. Moreover, in Scott and T.M., unlike here, the special conditions included the stigmatizing condition that the defendant register as a sex offender.

release: (1) the condition prohibiting Prochner "from engaging in an occupation, business or profession that would require direct supervision of children under the age of 18"; and (2) the condition prohibiting him from "hav[ing] any unsupervised contact with anyone under the age of 18." As noted, he registered no complaint about either condition to the district court when sentenced. His complaint now is that these two conditions constitute abuses of the sentencing court's discretion and violate the previously mentioned 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(b). However, for many of the same reasons already discussed relative to the treatment condition, we do not find plain error in the imposition of these two conditions.

To be sure, the argument could have been made -- although it was not -- that the condition prohibiting Prochner from engaging in any occupation that would require direct supervision of children is an occupational restriction subject to the specific limitations of 18 U.S.C. § 3563(b)(5) and U.S.S.G. § 5F1.5. Section 3563(b)(5), to which 18 U.S.C. § 3583(d) contains a cross-reference, allows a court to impose only a condition that the defendant "refrain . . . from engaging in <u>a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense</u>, or engage in such a specified occupation, business, or profession only to a stated degree or

-20-

under stated circumstances." 18 U.S.C. § 3563(b)(5) (emphasis added).

It can be argued, given especially Prochner's work history of jobs with children, that this condition impermissibly amounted to one that he "refrain . . . from engaging in a specified occupation, business, or profession" where the forbidden occupation bears no reasonably direct relationship to the conduct constituting the offense. 18 U.S.C. § 3563(b)(5).

We need not pass upon such an argument, however, as Prochner failed not only to raise it or any other objection to the condition in the district court but also made no mention of 18 U.S.C. § 3563(b)(5) or U.S.S.G. § 5F1.5 on appeal. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (arguments not raised on appeal are deemed waived). And, in any event, we do not think that the unobjected-to imposition of this condition, even if arguably contrary to § 3563(b)(5), amounts here to plain error. See Olano, 507 U.S. at 736 (incorporating in the plain error standard the requirement that the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings").

We accordingly hold that Prochner has not demonstrated that the court plainly erred in imposing the conditions on his contact with minors.[7]

---

[7]Prochner is, of course, free to petition the district court for modification of this condition if, during the duration of his term of supervised release, it unduly and unreasonably interferes

-21-

D.  Amount of Loss

        Finally, Prochner argues that the district court impermissibly shifted the burden to disprove loss for purposes of restitution.  See 18 U.S.C. §§ 3663-3664.  This Court reviews restitution orders for abuse of discretion and the subsidiary findings of fact for clear error.  United States v. Cutter, 313 F.3d 1, 6 (1st Cir. 2002).

        The government bears the burden of establishing the amount of loss for purposes of restitution by a preponderance of the evidence.  18 U.S.C. § 3664(e); United States v. Vaknin, 112 F.3d 579, 583 (1st Cir. 1997).  A PSR generally bears "sufficient indicia of reliability to permit the district court to rely on it at sentencing."  United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003).  The defendant may object to facts in the PSR, but "if [his] objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR."  Id.; see United States v. Grant, 114 F.3d 323, 328 (1st Cir. 1997).

        In determining the restitution figure, the district court relied on the statement of the victims and losses in the PSR.  The PSR noted that "[t]he precise loss figure has been difficult to establish" because "the account numbers were obtained from Internet sites that made the numbers available to numerous individuals."

_____

with his ability to earn a livelihood.  See 18 U.S.C. § 3583(e)(2).

-22-

The PSR indicated, however, that "the government can establish that the loss figure directly attributable to the defendant is approximately $2,731.63." This total consisted of specific charges claimed by American Express and various retailers to be fraudulent. By the time of sentencing, this amount had been reduced by $121.44 owed to foreign-based retailers for which the Probation Office could not obtain contact information.

At the sentencing hearing, Prochner admitted to making several of the identified charges, but denied or questioned making several other charges. When the district court asked defense counsel if he had any evidence to dispute the charges, defense counsel replied, "I don't have anything other than the defendant's word that these are amounts that he disagrees with."

Here on appeal, Prochner argues that the list of victims and losses in the PSR is not sufficiently reliable to warrant the court's acceptance because, as Probation acknowledged, it is impossible to establish that Prochner, as opposed to another Internet surfer with access to the credit card numbers at issue, made the fraudulent charges. He argues that the district court should have excluded the disputed charges rather than shifting the burden of proof to him.

In the absence of rebuttal evidence beyond defendant's self-serving words, we cannot say the court clearly erred in accepting the PSR's calculation of the restitution amount. The

list of victims and losses was supported by the charges alleged to be fraudulent by American Express and various retailers, and it constituted sufficiently reliable evidence to satisfy the government's burden. The district court did not shift the burden of proof to Prochner; it merely demanded that, given the list of victims and losses presented in the PSR, Prochner provide more than his word to support his objection.[8] The district judge even noted that the restitution order could be corrected within seven days, and he invited defense counsel to submit evidence showing an error in the identification of the victims. Prochner failed to present any such rebuttal evidence within that time. In the absence of any rebuttal evidence, the court did not commit clear error in finding a loss of $2,610.19 for restitution purposes.

### III.

For the reasons stated, we **<u>affirm</u>** Prochner's sentence.

---

[8]This is not to say the judge was not free to have believed Prochner had it seen fit. <u>See</u> <u>United States</u> v. <u>Ruiz</u>, 905 F.2d 499, 508 (1st Cir. 1990) ("[W]here there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous.").