NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0352n.06
No. 21-5634

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Aug 22, 2022
DEBORAH S. HUNT, Clerk

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) |
| KRISTOPHER M. VOYLES, | ) |
| Defendant-Appellant. | ) |
|  | ) |
|  | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: COLE, BUSH, and NALBANDIAN, Circuit Judges.

BUSH, J., delivered the opinion of the court in which NALBANDIAN, J., joined. COLE, J. (pp. 11–16), delivered a separate opinion concurring in part and dissenting in part.

JOHN K. BUSH, Circuit Judge. Police arrested Kristopher Voyles for impersonating a veteran, whom we identify as M.H. A federal grand jury then indicted him for theft of government property and aggravated identity theft. While Voyles was awaiting transfer back to the Eastern District of Tennessee, federal corrections officers found a disturbing, sexually explicit note in Voyles's cell, revealing his desire to commit several sex crimes involving children. Voyles pleaded guilty to theft of government property, and, under his plea agreement, the identity-theft charge was dismissed. The district court sentenced Voyles to 27 months' imprisonment, six months above Voyles's Guidelines range, because of his prior repeated impersonations of M.H. The court also imposed sex-offender conditions on his supervised release because of the note.

Voyles appeals, claiming that the district court abused its discretion by imposing the sex-offender condition and varying upward at his sentencing. We disagree and affirm.

**I.**

Voyles has a history of impersonating M.H. In December 2017, police in Georgia arrested Voyles for stealing M.H.'s identity and using it to obtain prescription drugs from a Veterans Affairs Administration (VA) hospital. He was convicted of identity fraud and forgery and sentenced to two years, one to be spent in confinement and one on probation.

Voyles stole M.H.'s identity again in September 2019. That time, he pretended to be M.H. after police were called to a university library in Knoxville, Tennessee, where Voyles was harassing students. Police arrested him for criminal impersonation.

Then, in October 2019, Voyles checked himself into the Parkwest Medical Center in Knoxville using M.H.'s identity. Voyles complained of abdominal pain and blood in his urine and reported having homicidal thoughts. Because hospital staff did not know that Voyles was not M.H., they arranged for his transfer to the Mountain Home Medical Center, a VA hospital in Johnson City, Tennessee. He began treatment at Mountain Home, pretending to be M.H. until Voyles's relative called the hospital to report his real identity. Police arrested him on an outstanding warrant and took him back to Georgia.

Meanwhile, a federal grand jury indicted Voyles for theft of government property in violation of 18 U.S.C. § 641 and aggravated identity theft in violation of 18 U.S.C. § 1028A. While en route back to Tennessee, Voyles spent time in the Federal Transfer Center in Oklahoma City, Oklahoma. There, while Voyles lacked access to his mental-health medications, officers found an alarming note in his cell. The note consisted of two lists (obscenities redacted): "Girls I wanna F**k But Can't!" and "Baby girls I wanna F**k when I get out!" The first list contained

2

twenty-one names, including preteens and former child actors with "teen" in parentheses behind the names. The second list contained specific lewd descriptions of children and acts of rape he wanted to commit against those children. The back of the list contained the name of a female corrections officer at Voyles's facility with the caption (obscenity redacted): "Add to I wanna F**k list Officer K.L[]." That said, there is no evidence that Voyles has attempted to commit or committed any of these sex-related offenses.

At his initial appearance in court, a still-unmedicated Voyles acted erratically, so the magistrate judge ordered him to undergo a psychiatric evaluation. That evaluation found Voyles competent to proceed but noted that he exhibited multiple traits consistent with anti-social personality disorder and prescribed him medications. The district court found him competent to stand trial, but Voyles claims to have no memory of the list or of his first appearance in court.

In January 2021, Voyles pleaded guilty under a plea agreement to theft of government property, and the government dismissed the identity-theft charge. The presentence investigation report calculated a Guidelines range of 15 to 21 months' imprisonment based on a total offense level of 8 and a criminal history category of V. Neither party objected. The government then filed a sentencing memorandum and a supplemental memorandum addressing, among other things, the note found in his cell in Oklahoma City and his statements before his transfer to the VA hospital that he was "having homicidal thoughts" and "would end up harming someone" if he did not get help. As a result, the government requested a sentence at the top of Voyles's Guidelines range; Voyles countered, asking for time served and assistance with mental health and drug treatment.

The district court held a sentencing hearing in April 2021. Three aspects of Voyles's history concerned the court: the note expressing his desire to rape children (calling it a "glaring red flag"), his harassment of students in Knoxville at the college library, and an alleged attempt to

3

get strangers to drink gasoline by putting it into a tea bottle. So the district court continued the hearing and attempted to have Voyles undergo a psychosexual evaluation. He objected initially and eventually formally asserted his Fifth Amendment right against self-incrimination. The district court then cancelled the evaluation.

When the sentencing hearing resumed, the government sought a 21-month sentence and, for the first time, asked that a sex-offender condition be added to his supervised release. Voyles continued to seek only a time-served sentence. The district court imposed an above-Guidelines sentence of 27 months' imprisonment "for one reason and one reason only"—the similarity between Voyles's conduct in Atlanta and the offense at hand. The judge noted that Voyles's repeated identity theft "suggests a need for deterrence beyond that already captured by the Guidelines."

Over Voyles's objections, the district court also imposed several sex-offender conditions, "narrowly tailoring" them to his circumstances and requiring that Voyles:

1. Participate in a sex-offender mental-health program and waive any rights to confidentiality as to his probation officer;
2. Not have any contact or associations with anyone under age 18, except under specific conditions;
3. Not visit, frequent, or linger about any place primarily associated with underage children;
4. Not associate with anyone he knows to be a sex offender;
5. Submit to polygraph testing; and
6. Pre-approve all residences and employment with his probation officer.

The court found these conditions to be "reasonably related" to the § 3553(a) factors— specifically, the need for deterrence, the need to protect the public, and the need to provide necessary treatment. The district court noted, though, that if a psychosexual assessment revealed that Voyles did not "pose a risk" to children, it had no interest in keeping the sex-offender conditions in place. Voyles timely appealed.

**II.**

On appeal, Voyles raises two issues. First, he claims that the district court abused its discretion by applying sex-offender conditions of supervision upon his release from custody. And second, he claims that his sentence is substantively unreasonable. We take each claim in turn.

A. Sex-Offender Conditions

We review a challenge to a special condition of supervised release for abuse of discretion. *United States v. Childress*, 874 F.3d 523, 526 (6th Cir. 2017). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006) (quotation omitted). Ordinarily, we review a special condition like the one here for both procedural and substantive lawfulness. *Id*. at 528–29. But Voyles raises only a substantive challenge, so we need not address the procedural dimension.

We "must" uphold a condition of supervised release that is reasonably related to the "rehabilitation of the defendant and the protection of the public[.]" *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992) (per curiam) (citations omitted). We have interpreted this language to contain three requirements. First, the condition must be "reasonably related" to the § 3553(a) factors. *Childress*, 874 F.3d at 526. These factors include, among other things, the defendant's history and characteristics, the seriousness of the offense, adequate deterrence, and protection of the public from further crimes. *Id.* § 3553(a)(1)–(2). Second, the condition must not be a deprivation of liberty greater than reasonably necessary to satisfy these purposes. *Carter*, 463 F.3d at 529. And finally, the condition must align with any "pertinent policy statements issued by the Sentencing Commission." *Id*. (quoting 18 U.S.C. § 3583(d)(3)).

Based on these requirements, we do not believe sex-offender conditions to be punishments. *See Willman v. Att'y Gen. of the U.S.*, 972 F.3d 819, 825 (6th Cir. 2020) (finding that the Sex Offender Registration and Notification Act conditions were not a punishment for Eighth Amendment purposes); *Cutshall v. Sundquist*, 193 F.3d 466, 477 (6th Cir. 1999) (finding that a state sex offender registry law didn't impose a punishment). Instead, supervised release conditions are Congress's way of "improv[ing] the odds of a successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708–09 (2000).

Voyles argues that the sex-offender condition imposed on him is not reasonably related to the offense he committed or his personal history. We disagree. The condition need be reasonably related only to the relevant § 3553(a) factors. And the district court specifically imposed narrowly tailored conditions for those reasons set out in § 3553(a). His conduct is particularly troubling, especially given his troubling behavior and his expressed desire to rape underage children, among others, when he leaves prison. As the district court observed, it was left "in the ether" with no way to assess the risk Voyles posed to the public given his refusal to undergo psychosexual evaluation. Notwithstanding his stated desire to "transition[] into the community" upon his release.

Regardless of whether Voyles's note rose to the technical level of a criminal threat, the district court believed that it was threatening enough that Voyles posed a risk to the public. The district court carefully scrutinized the record and concluded that the evidence favored a need to protect the public by imposing the conditions that it did. There was no evidence to rebut the dangerous message conveyed by the note, so we cannot say it was an abuse of discretion for the district court to conclude that narrowly tailored sex-offender conditions were reasonably related to protecting the public from future criminal activity.

Voyles also makes a one-sentence assertion that the imposition of a sex-offender condition "imposes a greater deprivation of liberty than is reasonably necessary[.]" We disagree here as well. For one thing, the instant offense need not be a sex offense. *See Carter*, 463 F.3d at 530 n.5; *see also United States v. Culver*, No. 20-4089, 2021 WL 4258764, at *1–2 (6th Cir. Sept. 20, 2021). For another, "preventing danger to the community is a legitimate regulatory goal." *United States v. Salerno*, 481 U.S. 739, 747 (1987). And we have affirmed special conditions even though the crime was not a sex-related offense or committed in a sexual manner. *United States v. Barcus*, 892 F.3d 228, 236 (6th Cir. 2018). That said, similar conditions of supervised release are rare in our circuit. Imposing these conditions treads a fine line between the reasonable deprivation of liberty and the punishment of a thought-crime. But while we are mindful of avoiding the latter, Voyles did more than just think bad thoughts. The district court believed that his actions—writing chillingly specific threats about raping young children—were threatening enough to pose a risk to the public. Indeed, when prison officials found one of their female staff members listed on one of Voyles's notes, they ensured that she and Voyles were kept apart. So in extreme cases such as this one, where an individual does enough to make the sentencing court concerned for the public's safety, these conditions pass muster.[1]

As the district court stated, Voyles has no documented history of sexual malfeasance and did not suggest that he plans to act on the note upon his release. But the district court's inquiry does not end here; nor does ours. Voyles left an abhorrent note, chockfull of his specific desires. And the district court had specific tools at its disposal to address the note. The Eastern District of

---

[1] Admittedly, the facts do not line up cleanly, but other courts have found similar conditions proper. *See United States v. Prochner*, 417 F.3d 54 (1st Cir. 2005) (noting that while there was no direct evidence that the defendant had engaged in appropriate conduct with minors, he "at minimum, desired to have [] sexual relationships" with them); *see also United States v. Ross*, 475 F.3d 871, 874 (7th Cir. 2007) (finding evidence of a desire to commit crimes against children sufficient to warrant sex offender treatment under plain-error review).

Tennessee has promulgated thirteen possible sex-offender conditions as part of its local rules. *See In re Special Conditions of Supervised Release*, Standing Order No. SO-15-06 (E.D. Tenn. Nov. 6, 2015). The district court specifically considered each condition in the list, removing five of the conditions to fashion a sentence "narrowly tailored to these particular facts." And, because of this narrow tailoring, Voyles did not have to register as a sex offender. Instead, he must stay away from children and undergo treatment while awaiting the results of his psychosexual assessment. The district court's careful consideration of the unique record here was not an abuse of discretion.

B. Substantive Reasonableness

We review sentencing decisions for abuse of discretion as well. *Gall v. United States*, 552 U.S. 38, 51 (2007). The essence of this review is procedural and substantive reasonableness, *United States v. Bailey*, 27 F.4th 1210, 1214 (6th Cir. 2022), but Voyles challenges only the substantive reasonableness of his sentence today.

A sentence is substantively reasonable if it is "proportionate" given the circumstances and "sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Moon*, 808 F.3d 1085, 1090 (6th Cir. 2015) (citations omitted). Sentences above the Guidelines range, such as Voyles's, must have a sufficiently compelling justification to support such a variance. *Gall*, 552 U.S. at 50. But as we have noted, the district court "gets plenty of deference in this area[.]" *United States v. Johnson*, 934 F.3d 498, 500 (6th Cir. 2019); *see also United States v. Faulkner*, 926 F.3d 266, 273 (6th Cir. 2019) (noting that defendants challenging the substantive reasonableness of their sentences generally face an "uphill climb").

And so the question is whether the district court's six-month variance was supported by a sufficiently compelling justification. It was. The district court said that the variance was for "one reason and one reason only": the similarity between Voyles's troubling conduct in Atlanta and the

conduct that places him before us today.[2]  Voyles has stolen the same veteran's identity at least four times, including three times after serving a year in custody for his first go-round.  And the offense before us occurred less than a month after police arrested Voyles for impersonating M.H. in Knoxville.  It was "eminently reasonable" for the district court to consider the nature and pattern of Voyles's conduct and the (apparent lack of) efficacy of his previous sentences.  *Cf. United States v. Sanbria-Bueno*, 549 F. App'x 434, 441 (6th Cir. 2013).  And we believe the district court's variance to be within the range of proportionality.  *Moon*, 808 F.3d at 1090.

Voyles also argues, for the first time on appeal, that his sentence results in the creation of an unwarranted disparity because others with a similar offense level and criminal-history category have received lighter sentences.  He seeks to bolster his claim using national sentencing data, citing *United States v. Perez-Rodriguez*, 960 F.3d 748, 756 (6th Cir. 2020), for the proposition that such data is "essential" to assessing whether an unwarranted disparity exists.  We did note in *Perez-Rodriguez* that courts "should" consider Commission data, *id*. at 756–57 (citation omitted), but, we have since "expressly reject[ed]" imposing that consideration as an absolute requirement. *United States v. Hymes*, 19 F. 4th 928, 936 (6th Cir. 2021).  And "[n]either consistency, transparency, nor reliability are aided by effectively allowing statistical data to override the plain terms of the Guidelines."  *Id*.

Voyles also provides no specific factual comparisons to support his claim.  And without these comparisons, we are left with nothing but Voyles's instant argument, grounded only in an

---

[2] Voyles refers to his previous convictions as "mundane" to argue that an upward variance was unreasonable.  We disagree.  There is nothing mundane about the repeated impersonation of a veteran to harass others and defraud the government.

online tool provided by the Commission, that his sentence creates an unwarranted disparity.[3] Without more, we decline to examine it. *United States v. Barber*, 966 F.3d 435, 438 (6th Cir. 2020). The district court did not abuse its discretion in varying upward from Voyles's Guidelines range by six months.

## III.

The district court did not abuse its discretion in imposing sex-offender conditions or by varying upward for Voyles's sentence. We affirm.

---

[3] These factual comparisons presumably could exist in a different case with different facts. But here, after the Government pointed out the flaws in Voyles's argument, Voyles declined to respond, even after requesting an extension to do so.

COLE, Circuit Judge, concurring in part and dissenting in part. I agree with the majority that the district court did not abuse its discretion when it varied upward from Voyles's Guidelines range by six months. But I disagree with the majority's conclusion that the sex offender conditions imposed were proper. Finding that the district court abused its discretion by imposing these conditions, I respectfully dissent.

We review a challenge to a special condition of supervised release for abuse of discretion. *United States v. Childress*, 874 F.3d 523, 526 (6th Cir. 2017). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006) (quotation omitted). For the reasons discussed below, the district court abused its discretion by imposing conditions normally reserved for sex offenders without satisfying the requirements provided by 18 U.S.C. § 3563.

As an initial matter, 18 U.S.C. § 3563 governs a district court in setting conditions of supervised release. It provides that a sentencing court may "to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2), and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2)", impose certain discretionary conditions of supervised release. 18 U.S.C. § 3563(b). Essentially, a sentencing court may only impose conditions in this context if those conditions are both (1) reasonably related to the general sentencing factors outlined in § 3553(a); *and* (2) only deprive a defendant of his liberty or property if it is "reasonably necessary" to do so. In this case, the district court both failed to show that the conditions imposed on Voyles are reasonably related to the general sentencing factors outlined in § 3553(a), and that the conditions only deprive Voyles of his liberty or property because it is

11

"reasonably necessary" to do so. Because failing to meet either of these required elements means the district court abused its discretion, our analysis starts and ends with the "reasonably related" prong.

The district court imposed the following conditions of supervised release, normally reserved for sex offenders, on Voyles: sex-offender-specific mental health treatment at his own expense, associational restrictions that prohibit him from visiting, frequenting, or lingering in an area associated with minors without permission, associational restrictions that prohibit him from knowingly interacting with sex offenders, a psychosexual assessment at his own expense, polygraph testing at his own expense, and a requirement that all his residences and employment are approved in advance by a probation officer. Not one of these conditions is reasonably related to the sentencing factors in § 3553(a).

The sentencing factors outlined in 3553(a) are the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect: (1) the seriousness of the offense, (2) deter the defendant from criminal conduct, (3) protect the public from further crimes of the defendant, and (4) provide the defendant with correctional treatment in the most effective manner. 18 U.S.C § 3553(a)(1), (2); U.S.S.G. § 5B1.3(b). We have held that conditions can be based on any one of these factors. *See Carter*, 463 F.3d at 529. The "history and characteristics" of the defendant includes not only the crime of conviction, but also the history of the defendant generally, including whether he committed any sex offenses. *Childress*, 874 F.3d at 527 n. 2.

I start with the nature and circumstances of the offense. Voyles's crime of conviction is not related to the conditions. Voyles pleaded guilty to theft of government property, which has "nothing to do with sex." *Carter*, 463 F.3d at 530. Put simply, it is hard to imagine what

12

impersonation of a veteran, to access VA services, has to do with sex crimes. Accordingly, that factor cannot support the conditions imposed by the district court. This is particularly true for the requirement that all Voyles's employment be approved in advance by a probation officer. District courts may only impose occupational restrictions as a condition of supervised release if it complies with U.S.S.G. § 5F1.5. Occupational restrictions are any restrictions that limit the terms through which a defendant may engage in a specific occupation. U.S.S.G. § 5F1.5(a). By requiring Voyles to obtain approval before taking any job, the district court placed an occupational restriction on him. *See, e.g. United States v. Souser*, 405 F.3d 1162 (10th Cir. 2005) (mandatory notification condition is an occupational restriction). And occupational restrictions may only be imposed if the restriction bears "a reasonably direct relationship to the conduct constituting the offense[.]" 18 U.S.C. § 3563(b)(5); U.S.S.G. § 5F1.5(a)(1); *See also United States v. Stepp*, 680 F.3d 651, 672 (6th Cir. 2012) (voiding condition barring drug-trafficking defendant from employment in boxing). In this case, there is no evidence in the record to suggest that theft of government property supports such a broad employment restriction.

The "history and characteristics" factor does not support the conditions either. Although Voyles wrote a troubling note, he has no history of sex offenses, and nothing in the record suggests that he has a history of attraction to minors. In fact, the PSR makes no reference to previous sexual misconduct at all. Voyles's note, which he wrote while incarcerated and while experiencing a mental health crisis, seems to be nothing more than an isolated incident. The majority expresses its concern that "similar conditions of supervised release are rare in our circuit," and that the court should be hesitant to impose such conditions in all but extreme cases. I agree. But given the absence of previous sexual misconduct, this is not an extreme case.

Importantly, the absence of previous sexual misconduct distinguishes Voyles from analogous cases in our sister circuits. For example, in *United States v. Prochner*, 417 F.3d 54 (1st Cir. 2005), the First Circuit held that a district court may impose a sex-offender condition even when "the special condition . . . is not related to the crime of conviction." "Nothing contained in the statute underlying U.S.S.G. § 5D1.3 limits the condition of sex offender treatment just to individuals convicted of sex crimes." 417 F.3d at 63 (citing *United States v. York*, 357 F.3d 14, 20 (1st Cir. 2004)). But unlike in Voyles's case, the district court in *Prochner* pointed to multiple pieces of circumstantial evidence to support imposing sex-offender conditions. Specifically, (1) Prochner wrote multiple journal entries expressing his desire to have sexual relationships with adolescent males, and he indicated that he may have already had such relationships; (2) there was evidence of frequent contact between Prochner and young boys in his work history; and (3) a report by Prochner's mental health expert and an evaluation by a clinical social worker that stated he has a "potential problem" with adolescent males.

In contrast, the district court sentencing Voyles could not point to adequate evidentiary support in the record. The only thing the government pointed to in support of these conditions was the note Voyles wrote while incarcerated. In court, the Government said: "I don't have any evidence that he's committed a hands-on sexual offense against a child, I don't have any evidence that he's looked at child pornography, I have this note that arose after he was indicted through the competency evaluation process."

In *United States v. Ross*, 475 F.3d 871, 874 (7th Cir. 2007), the Seventh Circuit relied on *Prochner* to affirm the district court's imposition of sex-offender conditions even though Ross was not convicted of a sex crime. But like *Prochner*, the facts in *Ross* are materially different from those in Voyles's case. The district court in *Ross* cited the following evidence in the record:

14

(1) Ross expressed fantasies of having sex with minors; (2) Ross made several statements to the FBI about his involvement in a child sex ring; (3) while incarcerated, Ross engaged in sexual activities with other inmates, most of whom were victims of sexual abuse or in the sex offender program; and (4) a psychological evaluation concluded that Ross was likely to target vulnerable individuals.

In both *Prochner* and *Ross*, the sentencing courts relied on numerous pieces of evidence to establish that the defendants had "history and characteristics" that supported the imposition of sex-offender conditions. To summarize, both defendants had, on multiple occasions, expressed an interest in having sex with children, and both defendants implied they had done so in the past. In both cases, mental health professionals also concluded that the defendants were likely to either prey on vulnerable people or have some sort of "issues" with children. What's more, Prochner's employment history indicated that he had frequent contact with children, and Ross engaged in sexual misconduct while incarcerated. Differently, and as the government made clear in court, there was no evidence that Voyles had any kind of history with sexual misconduct or attraction to minors and/or vulnerable communities. Accordingly, the "history and characteristics" factor does not apply here.

Because the first two factors—the nature of the underlying offense and the history and characteristics of the defendant—are not reasonably related to the conditions imposed, the district court would need to find that one of the three remaining factors relates. These are (1) whether the imposed condition "afford[s] adequate deterrence to criminal conduct," 18 U.S.C. § 3353(a)(2)(B); (2) whether the condition "protect[s] the public from further crimes of the defendant," 18 U.S.C. § 3353(a)(2)(C); and (3) whether the condition "provide[s] the defendant with needed . . . medical care, or other correctional treatment," 18 U.S.C. § 3353(a)(2)(D). The majority argues that "[t]here

was no evidence to rebut the dangerous message conveyed by the note, so [it] cannot say it was an abuse of discretion for the district court to conclude that the sex-offender condition was reasonably related to protecting the public from future criminal activity."

I disagree with this reasoning. The government carries the burden to present evidence that a defendant may commit a sexual offense in the future. *Carter*, 463 F.3d at 531. And here, it failed to do so. Without evidence that Voyles may commit a sexual offense in the future, the imposed conditions cannot be reasonably related to deterrence, protection of the public, or medical care and correctional treatment.

Because the sex-offender conditions imposed by the district court fail to "reasonably relate" to any of the § 3553(a) factors, the district court abused its discretion. As a result, there's no need to address whether the sex-offender conditions are no greater than necessary or whether they are consistent with applicable policy statements. *See Carter*, 463 F.3d at 529.

Accordingly, I respectfully dissent.