# United States Court of Appeals
## For the First Circuit

No. 23-1494

UNITED STATES OF AMERICA,

Appellee,

v.

RONALD TILLEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Gelpí, Circuit Judges.

Lawrence D. Gerzog on brief for appellant.
Darcie N. McElwee, United States Attorney, and Benjamin M.
Block, Assistant United States Attorney, on brief for appellee.

June 26, 2024

**SELYA**, **Circuit Judge**. Defendant-appellant Ronald Tilley challenges an order of the district court granting the government's petition to modify his conditions of supervised release. Concluding that his modified conditions are reasonable and that no other error appears, we affirm.

**I**

We briefly rehearse the relevant facts and travel of the case. "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

In March of 2019, the appellant robbed a credit union in Bangor, Maine. He was shortly apprehended and pleaded guilty to bank robbery under 18 U.S.C. § 2113(a). His PSI Report identified two prior convictions that involved potential sexual misconduct and, consequently, suggested the imposition of special conditions of supervised release requiring the appellant to "participate in sex-offender treatment as directed by the supervising officer." The first prior conviction — in 2005 — was for aggravated assault, assault and terrorizing and involved an incident in which the appellant's wife at the time accused him of choking and sexually assaulting her. The second prior conviction — in 2008 — was for violating a protective order and involved text messages of a sexual

nature allegedly exchanged between the appellant and his underage niece.

Inasmuch as the appellant objected to the sex-offender treatment conditions, the parties reached a compromise requiring the appellant to undergo an assessment to determine whether sex-offender treatment was necessary. The district court provisionally sentenced the appellant to fifty-two months in prison and three years of supervised release, and the appellant commenced his term of supervised release in November of 2022.

In early 2023, the appellant completed the agreed upon Sexual Offense Assessment and Treatment Evaluation (SOATE), which was conducted by a licensed clinical social worker. According to one of the instruments used to assess the appellant's risk of sexual recidivism, he fell into the "well below average risk" category of being charged or convicted of another sexual offense due to the length of time that had elapsed since his last sexual misconduct. The SOATE recommended, though, that this risk assessment finding be interpreted "with caution" because the sexual history polygraph administered as part of the evaluation found the appellant's answer to the question "Since September 24, 2005, did you have physical sexual contact with a person under the age of eighteen?" to be deceptive. When asked about his response to this question in the post-test interview, the appellant denied that he had physical sexual contact with his niece. His

explanation for the deceptive response was that he was thinking of a famous singer whom he met in 2004, when she was fifteen years old, and had romantic thoughts about at the time. He claimed that he kept in touch with the singer and engaged in physical sexual contact with her after she turned eighteen.

On a different assessment of risk factors for sexual recidivism, the appellant scored in the 87th percentile, placing him "in the High density range of criminogenic needs." Areas identified by this assessment as being of "significant clinical concern" or "some noted clinical concern" included hostility toward women and deviant sexual preference.

The SOATE diagnosed the appellant with antisocial personality disorder and opioid use disorder, heroin, severe, in sustained remission. Among other things, it recommended that the appellant "have no unsupervised contact with minors" and "participate in weekly group therapy with a treatment provider specifically trained to intervene with sexually problematic behavior."

Based on the SOATE report's recommendations, the government filed a petition to add several special conditions to the appellant's supervised release terms. These conditions would require the appellant to participate in sex-offender treatment as directed by his probation officer; require the appellant to submit to periodic random polygraph examinations as directed by the

probation officer "to assist in treatment and/or case planning related to behaviors potentially associated with sex offense conduct"; prohibit the appellant from associating or communicating with minors (excluding incidental contact) except in the presence of a responsible adult who is aware of his background and with approval from the probation officer; prohibit the appellant from "go[ing] to, or remain[ing] at" any place where he knows minors are likely to be, such as a park, school, playground or childcare facility; and authorize the probation office to notify any organization or person to whom it determined the appellant to pose a risk.

The district court held a hearing on the government's petition on May 25, 2023. At this hearing, the appellant objected to the conditions proposed by the government's petition. He argued that the conditions were not supported by his 2005 conviction for assaulting his wife because he was never convicted of any sexual offense against his wife and that the relevance of both the 2005 and 2008 convictions was significantly mitigated by the amount of time (more than fifteen years) that had elapsed with no sexual misconduct incidents in the interim. The appellant also asked the court to consider his age and medical condition — at the time of the hearing, the appellant was sixty-three years old and suffered from serious liver cirrhosis — and emphasized that the SOATE did not diagnose him with any sexual disorders; nor was his most recent

conviction related to sexual misconduct. Regarding his deceptive result on the polygraph test, he argued that the result should be given "little or no weight" because polygraph tests have "not scientifically been proven to be reliable enough and accurate."

In June of 2023, the district court granted the government's petition. It acknowledged that the appellant's most recent conviction was unrelated to sexual misconduct, but explained that "his past sexual misconduct, robust and unabated criminal activity both distant and proximate, and the recommendations recited in [the] SOATE report all comfortably lead to the ineluctable conclusion that the proposed modifications promote the goals of supervised release." It also found that the conditions restricting the appellant's association with minors were "proportionate and reasonably related to the goals of supervised release and . . . [his] history and characteristics" based on the SOATE's recommendations.

This timely appeal ensued.

**II**

The appellant's sole challenge to the modified conditions is that the district court relied on "clearly erroneous facts" in imposing them. Because the objections were interposed to the challenges below, our review is for abuse of discretion. See United States v. Mercado, 777 F.3d 532, 537 (1st Cir. 2015); see also United States v. Smith, 436 F.3d 307, 310 (1st Cir. 2006).

A district court may impose any condition of supervised release that is reasonably related to at least one of "(1) the defendant's offense, history, and characteristics; (2) the need to deter the defendant from further criminal conduct; (3) the need to protect the public from further crimes by the defendant; and (4) the effective educational, vocational, medical, or other correctional treatment of the defendant." United States v. York, 357 F.3d 14, 20 (1st Cir. 2004); see United States v. Prochner, 417 F.3d 54, 63 (1st Cir. 2005). Conditions of supervised release should "cause no greater deprivation of liberty than is reasonably necessary to achieve the goals of supervised release." United States v. Del Valle-Cruz, 785 F.3d 48, 58 (1st Cir. 2015) (quoting United States v. Perazza-Mercado, 553 F.3d 65, 69 (1st Cir. 2009) (internal quotation marks and citations omitted)). Although the sentencing court must provide a reasonable explanation of the conditions, the court's reasoning may also be inferred from the record. United States v. Garcia, 872 F.3d 52, 54-55 (1st Cir. 2017). A "court's decision to impose [a] condition must have adequate evidentiary support in the record," Prochner, 417 F.3d at 63, although "the fact that a condition of supervised release is not directly related to [the defendant's] crime of conviction does not render that condition per se invalid." York, 357 F.3d at 20; see Prochner, 417 F.3d at 63.

We usually will not disturb the district court's factual findings at sentencing in the absence of clear error.  See United States v. Occhiuto, 784 F.3d 862, 868 (1st Cir. 2015).  "Clear error will be found only when, upon whole-record review, a reviewing court 'form[s] a strong, unyielding belief that a mistake has been made.'"  Id. (alteration in original) (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)).

We find no clear error here.  One of the appellant's primary claims of error is that the district court decision inaccurately referred to the appellant's previous "sex-based offenses" even though the appellant has never been convicted of a sex offense.  For the appellant to have been convicted of a "sex-based offense," though, is not essential for his sex-offender treatment conditions to be reasonable.[1]  We have, for example, upheld supervised release conditions requiring a defendant to undergo sex-offender treatment if directed to do so by the probation office and court even though he had never been convicted of a sex offense.  See Prochner, 417 F.3d at 58, 63-64.  In Prochner, we found the imposition of a sex-offender treatment condition reasonable because evidence in the record — including

---

[1] By "sex-offender treatment conditions," we refer to the conditions requiring the appellant to "participate in sex-offender treatment as directed by the supervising officer" and to submit to periodic random polygraph examinations to assist in treatment or case planning "related to behaviors potentially associated with sex offense conduct."

journal entries by the defendant and an evaluation by a clinical social worker — indicated that the defendant "ha[d] a potential problem with adolescent males." Id. at 64. Although Prochner — unlike this case — affirmed the challenged conditions on plain error review, its reasoning applies foursquare as the relevant analysis in Prochner focused on whether the district court "could reasonably believe that [the defendant] might pose a threat to children" and that participation in sex-offender treatment, "if further ordered, was reasonably related to the purposes of supervised release." Id.

So, too, there is "adequate evidentiary support in the record" for the sex-offender treatment conditions imposed in the case at hand. York, 357 F.3d at 20. Even putting to one side his ex-wife's disputed rape allegations from 2005, the undisputed facts in the record show that in 2008, the appellant was convicted of violating a protective order involving his underage niece, and his phone was discovered to contain sexually-charged text exchanges with her. Moreover, in 2023, a licensed social worker identified deviant sexual preference as an area of clinical concern for the appellant and concluded that he would benefit from "therapy with a treatment provider specifically trained to intervene with sexually problematic behavior." As in Prochner, these facts show that the appellant's sex-offender treatment conditions are reasonably related to the permissible goals of protecting the

public from future potential crimes by the appellant and providing him with necessary treatment. See 417 F.3d at 64.

The appellant insists that the district court erred in interpreting the text messages between him and his niece as an instance of sexual misconduct because "[t]here was no indication in the record that the protection order had anything to do with sexually explicit messages" and the appellant "explained that the messages on the phone were not his." We discern no clear error.

To begin, the origin of the protection order that the appellant allegedly violated is irrelevant to whether the appellant behaved in a sexually inappropriate manner toward his niece. Nor is the district court obliged to discredit evidence of the appellant's inappropriate conduct simply because he denied that conduct. Although the appellant objected below to the portion of his PSI Report that mentioned the "sexual nature" of the texts to his niece, the only basis for this objection was that he was sharing a phone with his niece's boyfriend at the time. This uncorroborated claim by the appellant is not enough for us to "form[] a strong, unyielding belief" that the district court made a mistake by relying on this portion of the PSI Report. Occhiuto, 784 F.3d at 868 (internal quotation omitted).

So, too, the district court did not err by stating that the SOATE "identified risks presented to the community by the [appellant] having unsupervised contact with minors." There is

nothing inaccurate about the district court's characterization of the SOATE: the evaluation explicitly recommended that the appellant "have no unsupervised contact with minors" and explained that its risk assessment was influenced by the appellant's deceptive answer to the polygraph question he was asked about whether he had engaged in any physical sexual contact with a minor since 2005. Although the appellant argues that the deceptive polygraph result was unreliable, he has not provided any evidence to substantiate this claim. Based on the SOATE findings and recommendations, combined with the appellant's history of inappropriately texting his underage niece, it was not clear error for the district court to find that the appellant would pose a risk to the community if allowed unsupervised contact with minors.

Finally, the appellant argues that the district court erred by characterizing his criminal history as "significant . . . from the time of the sexual misconduct to date," when in fact his criminal history was unexceptionable "after 2008 until the instant offense."[2] In drawing this conclusion, the district court relied on the appellant's PSI Report which

---

[2] The appellant also alleges that the district court misdescribed the SOATE as covering his conduct from 2003 to the present, when in fact it only covered his conduct from 2005 onward. He does not explain, however, why this discrepancy should have made any difference to the district court's analysis. This alleged error appears to be nothing more than a lapsus linguae, which is not a basis for vacating a reasoned decision. See Fed. Refinance Co. v. Klock, 352 F.3d 16, 28 (1st Cir. 2003).

recounted, in addition to the appellant's 2005 conviction concerning an alleged sexual assault, a 2008 conviction involving sending sexual messages to his minor niece, a 2008 conviction for escape, and the 2019 conviction for robbery.  Given these convictions, we find no error in the district court's description of the appellant's criminal history as "significant."

In sum, the district court's decision was not based on any factual error, and the modified conditions it imposed were supported by the record and reasonably related to one or more of the permissible goals of supervised release.  See York, 357 F.3d at 20.  Accordingly, the district court did not abuse its discretion in imposing these conditions.

### III

We need go no further.  For the reasons elucidated above, the district court's order modifying the appellant's supervised release conditions is

**Affirmed**.